*IN ERROR.*

ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

═══ ◎ ═══

NATHANIEL SWIFT, Appellant,
*against*
EZRA DEAN, Respondent.

THE appellant filed his bill against the defendant in the court of chancery, and, from the pleadings and depositions, the following facts appeared. In the year 1795, the appellant purchased of *William Powers*, an acre of land, with the buildings thereon, in *Hillsdale*, in the county of *Columbia*, for the consideration of 500 dollars, for which he received a full and ample deed. He put his son, *Daniel Swift*, into possession, who has since continued to occupy the premises, as the tenant of the 1789, executed a bond and warrant of attorney to C. for the debt due to C. to which he put his own name and seal, and the name and seal of B. In 1792, B. sold a piece of land to D. with covenants of seisin, &c. and warranty, and, in 1795, D. sold and conveyed the same land to E. A judgment having been entered up, by virtue of the warrant of attorney in favour of C. against A. and B. a *fieri facius* was issued thereon, by virtue of which the land was seized and sold, and A. became the purchaser at the sheriff's sale.

A bill in chancery having been filed by E. against A. to set aside the judgment, execution and sale, as fraudulent, on the ground that the judgment was entered without any warrant or authority from B. it was held, that the allegations of the bill being denied by the answer, and there being but one witness to support the bill, the judgment could not be set aside, but that A. appearing to be the only person interested in the judgment, and having received property with which to pay the debt due to C. he ought to be enjoined from proceeding under the judgment, or from bringing any action of ejectment in his own name, or the name of C. until he fully accounted for the disposition of the property he had received.

B. having given a warranty deed for the land, was considered as an incompetent witness in the cause, on the ground of interest.

Where a witness, in any stage of a cause, in law or equity, discovers himself to be interested, his testimony may be rejected.

*Marginal note:* A. and B. being partners in trade, in 1788 and 1789, and indebted to C. dissolved their partnership in 1789, and A. undertook to pay the partnership debts, and particularly the debt due to C. and received the partnership property for that purpose. A. in

IN ERROR.

ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

appellant. In *March*, 1797, the respondent brought an action of ejectment against the tenant. At the trial, the plaintiff was nonsuited, for the tenant's not confessing lease, entry and ouster, the appellant supposing that he had no legal defence to make in that suit.

*Gaius Dean*, being seised of the premises in fee-simple, had conveyed them, by a full and sufficient deed, to *William Powers*, on the 6th *November*, 1793.

*Gaius Dean* and *Ezra Dean* were, in 1788 and 1789, partners in trade, and became indebted to *Thurston & Minturn*, in the sum of 1,050 dollars; to secure the payment of which sum, *Ezra Dean*, on the 2d *September*, 1789, gave and executed a bond to *Thurston & Minturn*, and a warrant of attorney to confess judgment thereon. The bond and warrant of attorney were given in the absence of *Gaius Dean;* and *Ezra Dean* executed them, by putting his own name and seal, and the name and seal of *Gaius Dean;* for which the appellant alleged he had no power from *Gaius Dean*.

In the year 1793, the respondent, for the first time, produced a paper writing, purporting to be executed by *Gaius Dean*, bearing date, 20th *August*, 1789, constituting *Ezra Dean* his attorney, to sue for and collect debts in *New-York* or *Vermont*, &c. and " in his name to sign, seal, execute, and deliver, unto Captain *John Thurston*, any instrument which the said *Ezra Dean* or his attorney shall think necessary to secure the moneys due from me to the said *John Thurston*," promising to ratify, &c. with power of substitution, &c. There was no subscribing witness to the execution of the power; and the respondent alleged that it was by virtue of this power, and no other, that the bond and warrant of attorney to *Thurston & Minturn* was executed; and that the instrument was duly executed at the time it bears date; but the appellant stated that *Gaius Dean*, in putting the

seal of *Ezra Dean*, acted under what he conceived to be his power, as a partner.

By virtue of the warrant of attorney, a judgment was entered up in favour of *Thurston & Minturn*, on a plea of confession, in the court of common pleas, in *Columbia* county; and a *fieri facias* having issued against *Gaius Dean* and *Ezra Dean*, the sheriff, in *April*, 1795, sold the premises at public auction; and executed a conveyance thereof to *Ezra Dean*, as the highest bidder, for the sum of 125 dollars. But the respondent, in his answer, alleged, that *Powers* and the appellant were present at the auction, and had notice of the purchase by the respondent, and of the circumstances of the dispute about the title to the premises; that at the time of the sale by *Powers* to the appellant, it was agreed between them, that the purchase-money should not be paid until the decision of the dispute by certain arbitrators who were named, but who, by the death of one, and the public avocations of the other, were prevented from making an award; upon which the appellant paid the representatives of *Powers* the purchase-money, relying on the covenants in his deed, for indemnification.

In the latter end of the year 1789, *Gaius Dean* and *Ezra Dean* dissolved their partnership, and the appellant alleged, that the respondent undertook to pay and satisfy the partnership debts, and especially the debt due to *Thurston & Minturn;* and that *Gaius Dean* put into the hands of the respondent, for that purpose, partnership property to the amount of 1,000 pounds; but this was denied by the respondent, who alleged, that, on the dissolution of the partnership, a balance was due to him from *Gaius Dean*, for which he gave the respondent his bond, which has since been mislaid or lost.

The appellant charged in his bill, that the power of attorney was not executed until after the bond and war-

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

rant of attorney, and was void in law, not being executed in the presence of any witness; that the respondent had been guilty of fraud in not applying the partnership fund in his hands, to pay the debt due *Thurston & Minturn,* and prayed for an injunction to restrain any proceeding in the action of ejectment, and for relief generally.

Before the hearing of the cause, the deposition of *Beriah Phelps* was suppressed for irregularity, and the deposition of *Gaius Dean,* for incompetency.

*John Clark,* a witness, deposed, that he heard *Ezra Dean,* the respondent, say, that *Gaius Dean* had made over all the property which they, *Gaius Dean* and the respondent, had in copartnership in the state of *Vermont,* for the purpose of enabling the respondent to pay the debt due from them to *Thurston;* and that he also heard the respondent say, that the property in the state of *Vermont,* which *Gaius Dean* made over to him, was sufficient to. pay the partnership debt, which they owed to *Thurston;* that, at the time the respondent returned from the state of *Vermont,* and after *Gaius Dean* had made over the property, as above stated, the respondent said that he had given *Thurston* an execution bond, or confessed a judgment to him, but which the deponent did not recollect, which judgment or execution bond the respondent said would secure to *Thurston* any property *Gaius Dean* had, as they, *Gaius Dean* and the respondent, were in partnership, and that *Gaius Dean* knew nothing of the judgment or execution bond, and when he should find it out, he would be very angry about it.

*Reuben Murray,* another witness, deposed, that some time in the year 1703 or 1794, the deponent was present at a conversation between the respondent and *William Powers,* at the house of *William Powers,* in the course of which . conversation *Powers* asked the respondent how he had procured the power of attorney said to be

executed to him by his late partner *Gaius Dean*, and upon which the respondent had authorized a judgment to be entered up against himself and *Gaius Dean* in favour of *Thurston*, to which the respondent did not immediately return any answer; but in a short time afterwards declared, that he had made the power of attorney himself; that *Powers* then mentioned, that it was not legal for him so to do; and the respondent declared that he had made the power of attorney, and had signed *Gaius Dean's* name thereto, and had a right to do so as a partner. *Powers* then asked the respondent when he had made the power of attorney, to which he answered, that it was made at the time the same was dated; (which, according to the best of the deponent's recollection, was stated to be on the twentieth day of *August*, 1789;) that the deponent asked the respondent what kind of a power of attorney it was, and the respondent answered, that it was a general power of attorney to settle their partnership debts. The deponent had never seen the power of attorney, but recollected that the respondent also mentioned, that there were no witnesses to the power, and that, by virtue of the power, the respondent had executed a judgment bond for himself and *Gaius Dean* to *Thurston*, and, as this deponent thought, also to *Minturn*, for their debt against the respondent and *Gaius Dean*, and which judgment would hold the lands conveyed by *Gaius Dean* to *Powers*, and would stand good against the deed. And the deponent had since heard the respondent declare, that he meant to purchase the lands conveyed by *Gaius Dean* to *Powers* for himself, when they should be sold by an execution on the judgment; that at the time the conversation took place between the respondent and *Powers*, as stated above, *Powers* mentioned to the respondent, that he, *Powers*, knew the respondent had received the notes and books of the partnership for collection, and was to appropriate the same towards the payment of the part-

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

nership debts ; and that the respondent declared that he had so received the same, but that there was not sufficient to pay all the partnership debts.

The cause came on to be heard before the chancellor, in *September*, 1805, when the respondent objected to the bill as incompetent, for the want of *John Thurston*, *Gaius Dean* and *Daniel Swift*, as proper and necessary parties to the suit. On the 29th *October*, 1805, the chancellor decreed, that the appellant's bill should be dismissed with costs ; and from that decree an appeal was entered to this court.

The reasons for the decree were thus assigned by

THE CHANCELLOR. In this cause, two questions were argued.

1. Whether the bond was executed without authority ; and if so, was not to be considered as invalid. And,

2. Whether the defendant, having received property of the copartnership to pay the debts, should be permitted to avail himself of this purchase, to the prejudice of the complainant.

It was not contended, that any debt was due from the defendant, or from the latter and *Gaius*, to *Thurston* solely. The letter of attorney executed by *Gaius*, authorized the execution of any instrument which might be necessary to secure the moneys due from him to *Thurston*.

The defendant's answer, as to the execution of the bond and warrant to confess judgment, must be taken as true, as it is not contradicted ; and that it was sufficient for that purpose.

The allegation in the complainant's bill is, that the defendant undertook to pay the copartnership debts ; and *especially* that to *Thurston* and *Minturn ;* and that to accomplish this *Gaius* put into the defendant's hands, copartnership property, to the amount of 1,000*l.*

The witness's deposition limits the amount merely to *Thurston's* debt, which is at variance with the complainant's allegation. The defendant's denial is, therefore, not rebutted by this evidence. They apply to distinct and irreconcilable points; and the deposition, when compared with the allegation, does not support it; but the latter explains the former, so as, in a great measure, to destroy this opposition, and reconcile it to the answer.

The deposition of *Reuben Murray*, a witness on the part of the complainant, who testified to the declaration of the defendant, explicitly and exclusively applies to the copartnership debts collectively; but it is accompanied with an allegation, that the books and notes were insufficient to satisfy them.

In this respect, there is the same kind of incongruity. Strictly, books and papers are not of themselves property, beyond the value of the materials of which they are composed. They may be the evidence of property, and so they are treated by the witness; and though this distinction would, on any other occasion, perhaps, be considered as too subtle, here it must be admitted to have some effect, from the peculiar phraseology in the bill, and the explicit denial of the allegation that he had no property put into his hands by the complainant. This, if not sufficient, the defendant might have excepted to; but having received the answer in the limited sense of his bill, he cannot be permitted to enlarge it, and thus to entrap the defendant, by the evidence taken in the cause. The answer admits, that he, the defendant, executed the bond and warrant, which he alleges, " he had a right to do, by virtue of a power of attorney from his partner, the said *Gaius Dean;*" and he expressly denies the charge that it was done without authority; and in another part of his answer, he alleges,

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

"that *John Thurston* was the only ostensible person with whom the defendant was contracted." He also alleges, in answer to the complainant's charge that the letter of attorney referred to in the complainant's bill and contained in the affidavit thereunto annexed, was made previous to the confession of the judgment, that *Gaius Dean* executed it for the purpose of securing the debt due to *Thurston* and *Minturn.*

These facts constitute this a case of mere mistake. The power was intended to apply to the debt for which the judgment was afterwards confessed. And I was of opinion, under all the circumstances of this case, that it was well executed, and that the judgment was a valid one.

As to the second point. It is, in the first place, necessary to examine the evidence which applies to it, in connection with, or in opposition to the defendant's answer.

The answer denies that any copartnership property was put into the hands of the defendant, to pay the debts of such copartnership, or that due to *Thurston* and *Minturn.*

Opposed to this, is the deposition of *Clark* only.

He deposes, that he has heard the defendant say, that *Gaius* had made over all the property which *Gaius* and the defendant had in copartnership in the state of *Vermont*, for the purpose of enabling him to pay the debt due from them to *Thurston.*

There are some other views to be taken of the subject, but tending to the same result. It is, therefore, not necessary to pursue them, as I was of opinion, that these grounds were sufficient to repel the complainant's claim, and that his bill ought to be dismissed with costs.

*Van Vechten,* for the appellant.  1. The judgment under which the premises were sold to the respondent, having been entered up without a competent authority

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

from *Gaius Dean*, was void. Admitting the power of attorney to be genuine, and to have been given at the time it bears date, yet it authorized the respondent to secure the debt of *Gaius Dean* only to *John Thurston* alone. It did not authorize the giving a bond and warrant of attorney by *Ezra Dean* and *Gaius Dean* to *Thurston & Minturn* jointly. A power must be strictly pursued. A power to confess a judgment in favour of A. does not authorize a confession to A. and B. The partnership of *Gaius Dean* and *Ezra Dean* had been dissolved, and *Ezra Dean* had undertaken to pay all the copartnership debts out of the funds of the partnership left in his hands. *Ezra Dean* confessed that he had executed the bond and warrant of attorney, by virtue of his supposed power as a partner; but one partner cannot bind his copartner, by an instrument under seal. The evidence of the two witnesses is sufficient to outweigh the answer of the respondent.

2. Admitting, however, the judgment to be valid; yet as *Ezra Dean* had received the property of the partnership to satisfy the debt, he cannot be allowed to set up a purchase of that property, under the judgment against him and *Gaius Dean*. *Gaius Dean* having sold the premises, in 1792, to *Powers*, and received the purchasemoney, must be considered as a trustee for *Powers*; and the purchase, under the sheriff's sale, must enure to the benefit of *Powers*, as having, in fact, been made with his money.

3. If the testimony of *Gaius Dean*, which was suppressed at the hearing, had been received, it would have been conclusive. That deposition ought not to have been suppressed, after publication had passed. The respondent should have exhibited *articles of exception*, so that the appellant might have shown a release to the witness, and that there was no objection to his competency, on the ground of interest.* But, in fact, he was not in-

* *Hinde*, 374, 375. *Wyatt*, 422. *Barton*, 179, 180.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

terested, for any interest he had was perfectly neutralized.

*Henry, contra.* 1. The objection to the testimony of *Gaius Dean* was valid, and made at a proper time. The deed from him to *Powers* contained full covenants and warranty as to the title. He was bound, therefore, to maintain the judgment. It is a covenant, running with the land, of which the assignee might take advantage. Where the vendor of an estate warrants the title, he cannot be a witness in support of the title of the vendee, in an action against him by a third person, for the pre-mises.*

* 2 Roll. Abr. 685. Peake's Law of Evid. 170. (178.)

The objection was made, pursuant to a notice given to the appellant before the hearing. In a court of law, if a witness should appear to be interested, at any time during the trial, his evidence will be rejected; for the same reason, in a court of equity, if a witness, at the hearing, should appear to be interested, his deposition will be suppressed.†

† 2 Vern. 465.

2. It ought to have been clearly proved by the appellant, that *Ezra Dean* had received property sufficient, and for the purpose of paying the debt due to *Thurston & Minturn.* This is expressly denied in the answer of the respondent; and the allegation cannot therefore be supported by the testimony of a single witness.‡

‡ Com. Rep. 589. 1 Vern. 161. 2 Vern. 283. Select Cas. in Ch. 55. 1 Ves. 66. 97. 125. 2 Ves. jun. 244. 3 Ves. jun. 170. 1 Bro. C.C. 52. 2 Atk. 19 3 Atk. 407. 649. 2 Freem. 146.

The property said by the witness to have been placed in the hands of *Ezra Dean*, consisted in outstanding debts; and the appellant should have gone further, and proved, that those debts had been collected, and that the respondent had money sufficient to pay *Thurston & Minturn.* There is no evidence of a promise to pay the debts. The partnership was not, in fact, dissolved, until after the power of attorney was executed, and the judgment entered up. The appellant ought to have alleged, that no such power had ever been given, and to have disproved the genuineness of the one set up by the re-

spondent. The want of subscribing witnesses to a deed
does not affect its validity. Proof of the signatures and
delivery is sufficient.

This is an attempt to set aside a judgment, by a sub-
sequent purchaser, with knowledge of the judgment.

3. If the judgment could have been avoided in a
court of law, on the ground of the insufficiency of the
power of attorney, then there was an adequate remedy
at law, and no occasion for resorting to a court of
equity. If the judgment is valid at law, it cannot be
set aside, on the ground of the incompetency of the
power, as the debt on which the judgment was entered
was *bona fide* due to *Thurston & Minturn*. The equity
is in favour of the judgment, and of the legal rights ac-
quired under it. Where the equity is equal between
the parties, the party in possession of the legal right
will not be disturbed.

4. Another objection was taken, at the hearing, of a
want of proper parties. It is necessary that all persons
materially interested in the subject, should be parties to
the suit.*

There are other creditors of *Gaius Dean*, who may
also contest the validity of the judgment. *Daniel Swift*,
being a tenant for years, ought to have been a party.
He may file his bill also to invalidate the judgment on
the same grounds as those stated by the appellant.

*E. Williams*, in reply. The objection of a want of
proper parties, does not properly arise on the appeal,
which is from the decree of the chancellor, dismissing
the bill; for the chancellor, on application to him for
that purpose, would have permitted the bill to have been
amended by adding parties. But, in truth, the persons
who have been named, were not necessary parties.

As to the competency of *Gaius Dean*. The interest
which excludes a witness is an interest in the event of
the suit, not in the question put, which goes merely to

*IN ERROR.*

ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

* *Mitf. Plead.*
144.

*IN ERROR.*
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

his credit. *Gaius Dean* had no interest in the property. The eviction of *Swift* would not vary his responsibility. He was as much interested in supporting the judgment, as in protecting the title of *Powers.*

In case of a failure of title, the covenantor is answerable for the consideration money and interest.

We contend that the judgment is not valid; and we have impeached it so far, as to cast the *onus probandi* on the respondent, to prove a legal and competent power from *Gaius Dean* to him. The oath of the respondent is not sufficient proof. The circumstance of there being no witness to the instrument, though it does not absolutely invalidate it, is a very strong ground of suspicion, as the practice of having subscribing witnesses to a deed is universal and invariable. Again, the first appearance of this power, long after the judgment, is another suspicious circumstance; and this suspicion is augmented by the confession of the respondent, that he gave the warrant of attorney, under the supposed power of a partner to bind his copartner by deed. There is not proof even of the hand-writing of *Gaius Dean.*

But, admitting the validity of this instrument, it did not authorize the giving the bond and warrant of attorney to *Thurston & Minturn.* An attorney cannot go beyond the express terms of his authority, which must be strictly pursued.

There is evidence that the respondent had property put into his hands with which he undertook to pay the debt, and there is no evidence that it was insufficient.

YATES, J. This cause comes before this court on an appeal from a decree made in the court of chancery, dismissing the appellant's bill with costs.

The facts must be in the recollection of the court, it will therefore be unnecessary for me to state them.

The appellant objects to the decree,

1. Because the judgment of *September*, 1789, is null

and void, and that consequently no property could pass by the conveyance under it.

2. If this judgment should be deemed valid, then the purchase made by *Ezra Dean* must enure to the benefit of *Gaius Dean.*

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

The letter of attorney by which *Ezra Dean* alleges he was authorized to give the bond and warrant of attorney, is attended with the suspicious circumstance of being without a subscribing witness ; and if arrangements had not taken place between the parties, making it necessary to delegate some such powers to the person undertaking the adjustment of this copartnership concern, I should have doubts whether *Gaius Dean* ever executed it, with full knowledge of the extensive powers contained in it. But no imposition in obtaining the execution of this instrument, is brought home to *Ezra Dean*, and the copartnership and dissolution being admitted by the bill and answer, it must, under all the circumstances, be deemed a *bona fide* transaction. Assuming this, then, as a fact, the next inquiry will be, whether this letter of attorney authorized the giving of the bond and warrant of attorney to secure the payment of the debt due jointly from *Gaius* and *Ezra Dean*, to *Thurston* and *Minturn.* I think we may intend that an unsuccessful attempt must have been made to the court below, to set aside this judgment ; and although this is not alone sufficient to uphold it ; yet it demands the greater caution not to disturb it, without the strongest reasons ; particularly, as no separate debt appears to be due from *Gaius Dean* to *Thurston & Minturn*, or either of them, which might easily have been proved, if the fact was so. On the contrary, by the bill and answer, it is admitted that a debt was due and owing by the copartnership to *Thurston & Minturn*, of 420*l.*

The inference irresistibly must be, that this is the same debt mentioned and intended by the letter of attorney. The judgment then being considered valid in law, the question arises whether the purchase made by *Ezra*

IN ERROR.
•••••
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

*Dean*, under that judgment, does not enure to the benefit of *Gaius Dean*, on the ground of its having been made with funds put into his hands for the express purpose of paying off that debt.

It has been mentioned in the course of the argument, that this is an attempt of a purchaser with full notice, to set aside a judgment. This cannot be denied, for it appears that *Powers* and the appellant were both at the vendue ; that at the time of sale to the appellant, it was agreed between the appellant and respondent, that the purchase-money should not be exacted, until after a decision of their dispute by the arbitrators, to whom the same had been submitted in writing. The parties have therefore proceeded with their eyes open, so that nothing, can be alleged by either on the ground of innocent purchasers.

By this letter of attorney, *Ezra Dean* is authorized to collect all debts then outstanding and due to the said *Gaius*, either in the state of *New-York* or the state of *Vermont*, and also to prosecute several other persons particularly named therein. It is, therefore, evident that such debts did exist, and the amount (if any) subsequently received by *Ezra Dean*, has never been particularly disclosed, so that without a specific account rendered by him, no correct conclusion can be drawn, as to the effect of such investigation on the validity of the title to the premises. If the decision, therefore, wholly depends on this point of the case, the only course would be to direct further proceedings in the court below, but without this account rendered, sufficient appears to entitle the appellant to relief.

By the testimony of *John Clark*, the respondent *Ezra Dean* confessed that the property in *Vermont* made over to him by *Gaius Dean*, was sufficient to pay the partnership debt, which *Gaius* and the respondent owed to *Thurston & Minturn;* so that at all events he must have been in possession of an amount equal to the consideration paid by him at the sheriff's sale, for this property. He, therefore, cannot be permitted

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

to set up this title against the purchaser under *Gaius Dean;* but must be deemed to hold for his benefit.

I am, accordingly, of opinion, that the decision of his honour the chancellor be reversed; and that the cause be remitted to the court of chancery, with directions to enjoin the respondent not to proceed in the ejectment cause, commenced in *March*, 1797, mentioned in the bill of complaint; so that the appellant holding his title under *Gaius Dean*, may be quieted in the possession and enjoyment of the property, notwithstanding the title of *Ezra Dean*, derived from the sheriff of *Columbia*, under the judgment of *Thurston & Minturn* against *Gaius Dean* and the respondent.

THOMPSON, J.  The appellant's bill, in the court of chancery, prays an injunction to restrain any proceedings in an action of ejectment, brought by the respondent, to recover possession of about one acre of land, with the buildings thereon, situated in *Hillsdale*, in the county of *Columbia*.  The appellant claims title to these premises, under *William Powers*, who purchased the same from *Gaius Dean*.  The respondent derives his right under a sheriff's deed and sale, made by virtue of an execution, issued on a judgment obtained in the court of common pleas, in *Columbia* county, by confession, in *September*, 1789, in favour of *John Thurston* and *William Minturn* against *Gaius Dean* and *Ezra Dean*.  This judgment, the appellant contends, ought not to be enforced against the property of *Gaius Dean*, which he had purchased for a valuable consideration :

1. Because the judgment was entered up upon the confession of *Ezra Dean* alone, without any competent authority from *Gaius Dean ;*

2. Because *Gaius Dean* had put into the hands of the respondent funds, to satisfy the debt of *Thurston and Minturn*, and which he ought to have applied to that purpose.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

A preliminary question, relative to the suppression of the deposition of *Gaius Dean*, was raised and argued. This testimony, I think, was properly suppressed, for incompetency. *Gaius Dean* had given a warranty deed to *Powers*, under whom the appellant claims. He was, therefore, interested to defeat this judgment, because an eviction under it would have been a breach of the cove‑ nant in his deed. His interest was not neutralized. be‑ tween the parties. The object of his testimony was altogether to destroy the authority, under which the judgment was entered against him, which was pro‑ tecting himself against an action upon his deed; and it does not appear but that *Thurston & Minturn* are fully satisfied, as the respondent is the only person appearing here to claim the benefit of this judgment. This testimony was suppressed in due time. It is a rule well settled at law, that a witness, who, in any stage of his examination, discovers himself to be interested, is to be rejected, and his evidence entirely set aside. And the case of *Needham* v. *Smith*, (2 *Vernon*, 463.) shows that the same rule prevails in equity. This case must, therefore, I think, be decided, without taking into consi‑ deration the deposition of *Gaius Dean*.

With respect to the first question, as above stated, the appellant's bill alleges, that the bond and warrant of attorney were given by the respondent alone, *Gaius Dean* then not being present, and to which the respond‑ ent put his own name and seal, and the name and seal of *Gaius Dean* without any power or authority whatsoever, from *Gaius Dean*, to make, execute, and in his name, seal and deliver such bond and warrant of attorney. The respondent, in his answer, admits the execution of the bond and warrant, as stated by the appellant; but denies, that he had no power or authority whatsoever, from *Gaius Dean*, to make, execute, and in his name seal and deliver the bond or warrant of attorney,

and expressly avers, that the instrument set forth in the appellant's bill, was duly executed at the time it bears date, by *Gaius Dean*, for the purposes therein mentioned; and that the time, intent, and meaning of it was, to authorize him to make and execute the bond and warrant of attorney. Thus we see that the allegation in the bill, respecting the authority from *Gaius Dean*, is positively and explicitly denied by the answer, and there is but one witness to support the bill. It falls, therefore, within the settled rule of equity, that no decree can, in such case, be made against the answer. (1 *Vernon*, 161. 1 *Vez.* 66. 97. 125. 2 *Atk.* 19. 3 *Atk.* 408. 649.) I am, accordingly, of opinion, on this point, that the judgment ought not to be set aside, especially, as *Thurston & Minturn* are not parties before the court, and their interest might be materially affected.

IN ERROR.
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

I am, however, inclined to think, that *Ezra Dean* ought to be restrained from deriving any benefit under this judgment. He is the only person before the court, claiming an interest in it. Recurrence to the bill and answer, and proofs in the cause, will show the situation in which he stands; and how inequitable it would be to allow him to enforce payment of this judgment, out of the private property of *Gaius Dean*, to the prejudice of a *bona fide* purchaser. The bill states, that in the latter part of the year 1789, the respondent and *Gaius Dean* dissolved their partnership, and the respondent undertook to pay and satisfy all the partnership debts, and especially the debt due to *Thurston & Minturn*, and that, to enable him to accomplish this, *Gaius Dean* put into the respondent's hands partnership property to the amount of 1,000*l.* to pay the debt due to *Thurston & Minturn*. The respondent expressly denies, that *Gaius Dean*, to enable him to pay and satisfy the copartnership debt due from them to *Thurston & Minurn*, ever put

IN ERROR.
.....
ALBANY,
Feb. & March,
1810

SWIFT
v.
DEAN.

into his hands, partnership property to the amount of 1,000*l.* or to any amount whatever.

The precise day when this partnership property was transferred to the respondent, is not stated; but it is fairly to be inferred, that it was upon the dissolution of the partnership, in the latter part of the year 1789, which was subsequent to the giving of the power of attorney, and the entry of the judgment in question. If the respondent had received funds for the purpose of discharging this debt, he ought to have applied them to this object. As the allegation in the bill respecting the partnership property is denied by the answer, we must look to the evidence to see how far it is supported. *Clark* testified, that he heard the respondent say, that *Gaius Dean* had made over to him all the property which they, *Gaius Dean* and the respondent, had in copartnership, in the state of *Vermont*, for the purpose of enabling him to pay the debt due from them to *Thurston*, (*Thurston & Minturn*,) and that the property thus made over to him *was sufficient* to pay this debt. *Reuben Murray* testified, that he was present at a conversation between the respondent and *William Powers*, respecting the power of attorney and partnership business; and heard the respondent acknowledge that he had received the notes and books of the partnership, between him and *Gaius Dean*, for collection, and was to appropriate the same to the payment of the partnership debts, but that there was not sufficient to pay *all* the partnership debts.

The allegation in the bill, appears to me to be substantially supported by the testimony of two witnesses. They both concur in proving the respondent's acknowledgments, that partnership property was put into his hands, for the purpose of paying the partnership debts. To one, he explicitly acknowledged, that partnership property was made over to him, for the express purpose of paying the debt to *Thurston & Minturn*, and that there was enough

for that purpose. To the other, he acknowledged the receipt of partnership property for the purpose of paying the partnership debts generally, alleging that there was not enough to pay the whole of them. Not pretending, however, but that there was sufficient to pay the debt to *Thurston & Minturn.* How the partnership concerns, between the respondent and *Gaius Dean,* have been settled, or whether *Thurston & Minturn* have been satisfied for their debt, are not now subjects of inquiry. The respondent is the party now before the court, claiming the benefit of this judgment. And the fact, that it lay dormant from the year 1789, until the year 1795, taken in connection with the threats and declarations of the respondent, that he intended to purchase, under this execution, the land, sold by *Gaius Dean* to *William Powers,* for himself, affords a pretty strong inference, that the respondent was the party having the control of this judgment, and for whose benefit the sale under the execution was made. This, however, is matter of inference only. But the proof is positive, of his having received partnership property, for the purpose of paying the partnership debts, generally, and especially that due to *Thurston & Minturn.* I think, therefore, he ought not to be permitted to avail himself of the private property of *Gaius Dean,* to discharge this debt, without accounting for the disposition of the property he had received. He is the only person capable of rendering such account.

I am, accordingly, of opinion, that the respondent ought to have been enjoined from proceeding in his action of ejectment, and that the decree of the court of chancery ought to be reversed.

SPENCER, J. and VAN NESS, J. having been formerly concerned, as counsel in the cause, gave no opinion.

IN ERROR.
.....
ALBANY,
Feb. & March,
1810.

SWIFT
v.
DEAN.

A majority of the court concurring in the opinions above delivered, it was, thereupon, ORDERED, ADJUDGED, and DECR...ED, that the decree of the court of chancery be reversed; and it was ORDERED and ADJUDGED that the respondent be enjoined from any further proceedings in the action of ejectment, mentioned in the appellant's bill, and from further proceedings under the ejectment of *John Thurston and William Minturn* against the respondent and *Gaius Dean*, mentioned in the said bill, until he shall, by accounting to the court of chancery, for the disposition of the property of the said *Gaius Dean*, put into his hands to pay the said debt due to *John Thurston and William Minturn*, make it satisfactorily appear to the court of chancery, that such property was not sufficient to pay the said debt, or the proportion thereof, which the said *Gaius Dean* was justly bound to pay; but that the said judgment of *John Thurston and William Minturn*, against the respondent and *Gaius Dean*, shall be, in no wise, affected by this decree; and that the proceedings be remitted, &c.

                              Judgment of reversal.