## Case No. 15,924.

### UNITED STATES v. ONE CASE OF HAIR PENCILS.

[1 Paine, 400.] [1]

Circuit Court, N. D. New York. April Term, 1825.

DEPOSITION—OBJECTIONS TO COMPETENCY OF WITNESS—CUSTOMS SEIZURE—INQUIRY AS TO ACCIDENT OR MISTAKE.

1. Objections to the competency of the witness should be made at the time of taking a deposition under the 30th section of the judiciary act [1 Stat. 88], if the party attend, and the objections are known to him, in order that they may be removed. Otherwise, he will be presumed to have intended to waive them.

[Cited in Shutte v. Thompson, 15 Wall. (82 U. S.) 160.]

2. But the objection may be made at the time of reading the deposition, if the facts constituting the objection were not known to the party when it was taken.

3. Where goods are seized as forfeited, under the act of the 20th of April, 1818 [3 Stat. 433], for being entered at the custom house differently from the invoice, the inquiry cannot be made at the trial, whether such difference proceeded from accident or mistake, the question being referred exclusively to the secretary of the treasury.

[Cited in U. S. v. Platt, Case No. 16,054a.]

[Cited in People v. Bussell, 59 Mich. 111, 26 N. W. 310. Cited in brief in Wood v. Helmer, 10 Neb. 65, 4 N. W. 968.]

4. Nor has the collector a right to make such inquiry on the seizure of goods under this act.

5. The provision in the act of the 2d of March, 1799 [1 Stat. 627], allowing such inquiry to be made by the court or collector, is impliedly repealed by the act of 1818, rules of construction as to the repeal of statutes by implication.

[Cited in U. S. v. Twenty-Five Cases of Cloth, Case No. 16,563; U. S. v. Gates, Id. 15,191; U. S. v. The Cuba, Id. 14,898.]

---

1 [Reported by Elijah Paine, Jr., Esq.]

R. Tillotson, U. S. Dist. Atty.

G. Griffen, for defendants.

THOMPSON, Circuit Justice. ·The libel filed in this case in the court below, alleges a forfeiture of the merchandise therein set forth, by reason of a false entry of the goods at the custom-house. [Case unreported.] It is founded upon the 22d section of the act of the 20th April, 1818 [6 Bior. & D. Laws, 306; 3 Stat. 433]. Upon the trial a bill of exceptions was taken, and the case comes before this court upon a writ of error. And the questions presented by the bill of exceptions are: (1) Whether the deposition of John S. Cornell, whose name appeared on the bond as one of the sureties for the appraised value of the goods in question, was admissible in evidence. And, (2) whether the judge erred in submitting to the jury to determine, whether the false entry was by mistake and accident, and not with an intention to defraud the revenue.

1. It has not been denied, but that Cornell was interested, and that his testimony ought to have been excluded, if the objection had been made in due time. But it is said, that the objection is waived by the plaintiff's counsel appearing and cross-examining the witness when his deposition was taken. This deposition was taken de bene esse, under the provisions of the 30th section of the judiciary act. 2 Bior. & D. Laws, 68 [1 Stat. 88]. And the absence of the witness out of the district, and at a greater distance than one hundred miles from the place of trial, was duly proved. So that the sole question is, whether the cross-examination of the witness precluded the party from making the objection at that time?

The rule by which courts of justice have been governed, as to the time when the objection is required to be made to an interested witness, has undergone a considerable change. It was at one period considered, that the objection came too late, after the witness had been sworn in chief, and examined and cross-examined. And this strictness seemed to meet the approbation of Lord Mansfield, in the case of Abrahams v. Bunn, 4 Burrows, 2252, although he did not so expressly rule. But this rule has been relaxed, and it is now well settled in trials at law, that a witness who, in any stage of his examination, discovers himself interested, is to be rejected, and his evidence entirely set aside. Phil. Ev. 96; 1 Term R. 719; 6 Johns. 538. And the same rule prevails as to the depositions of witnesses in chancery proceedings, and to which the present case is more analogous. The examination of witnesses there, is always de bene esse, and with a saving of all just exceptions; and whether so expressed in the rule or order for examination, or not, it is always so understood. 1 Har. Ch. Prac. 589; Phil. Ev. 97, note; 3 Johns. 593, 607; 6 Johns. 538; 2 Vern. 463.

It is not pretended, that the district attorney had any personal knowledge or actual notice that Cornell was security in the bond, or that any objection would be ·made to his testimony when he attended the examination; and I cannot think that the United States are to be concluded by any presumed knowledge of the fact by the district attorney. He is not officially charged with the business and duty of taking such bonds, and it would be carrying the doctrine of constructive notice to an unreasonable length, to bind the United States thereby, in a case like the present. ˙ I have no difficulty in saying, as a general rule, that when the objection is known at the time of taking the deposition, it should be then made. It is no more than just and reasonable to presume, in such case, that the party intended to waive the objection.

But there can be no presumption of a waiver, where the party is ignorant of the fact from which it is to be presumed, and where the law does not cast upon him any such knowledge. Good faith and fair dealing require the objection to be made at the time of the examination of the witness, when known, in order to give the party an opportunity of removing the objection. This, in ordinary cases, might be done by a release; but in the present case it was not in the power of the party to discharge the interest. Nor could this have been done by the commissioner; he had no authority to substitute any other security. The objection, therefore, in this case could have only had the effect of giving notice to the party, so as to enable him to apply to the proper authority to change the security, and have the deposition afterwards taken. The claimant knew of the interest, and he ought not to be permitted to speculate upon the event of such knowledge by the opposite party, but should have called upon him to know whether the objection would be insisted upon.

To preclude the objection at the trial, when the fact upon which it is founded is discovered, without imputing any negligence to the paty from whom the objection comes, would, I think, be unjust, and against the sound and wholesome rules of evidence, and would be going beyond what has been sanctioned by any of the cases cited on the argument, or which have fallen under my observation.

In the case of Bland v. Archbishop of Armagh, 3 Brown, Parl. Cas. 622, the evidence was voluntary affidavits taken at the commencement of the suit by the consent of parties. The objection was not on the ground of interest, but bias or partiality growing out of circumstances well known to the party at the time the affidavits were taken, and he had also consented to a hearing in the cause after publication, without taking an objection to the evidence. If the objection would, therefore, at any time have gone to the competency of the testimony, it was a strong case of waiver, with full knowledge of the circumstances. So also in the case of·Corporation of Sutton

Coldfield v. Wilson, 1 Vern. 254. The objection was, that the witness was a member of the corporation, and he had been cross-examined, not only as to his being a member of the corporation, but on the merits. Here then was full knowledge of the interest, when the cross-examination was gone into. And when the court, therefore, say the cross-examination makes a witness competent, though otherwise liable to exception, it must be taken in reference to the circumstances appearing in that case, and which brings the case within the rule I have laid down.

The same remarks are applicable to the case of Ogle v. Paleski, Holt, N. P. 485, which was much relied upon on the argument. The action was against the defendant as owner of a ship, which by negligence in the management had injured the plaintiff's brig. The cause had been put off on a former occasion at the instance of the defendant, with liberty reserved to the plaintiff to examine witnesses on interrogatories. And the evidence offered was the answers of the captain of the plaintiff's ship; and the first answer discloses the fact, that the witness was on board the ship at the time of the accident. The objection was, that his examination could not be read without showing a release before it was taken. The answer was, that the objection was apparent on the examination, and should then have been made, before cross-examining the witness; that the objection might be waived, and that it had been waived, by not taking it at the time when it might have been disposed of by a release. And Chief Justice Gibbs said, the objection ought to have been made in a former stage of the cause, and not having been thus made, when it might have been cured, it ought not to prevail. This was a decision in perfect harmony with the rule which governed the other cases I have referred to, and to which I yield my full assent. But the present case does not fall within it. There is an essential, and, I think, a controlling fact which distinguishes it; the want of either actual or constructive notice of the interest of the witness, when the deposition was taken. The judgment must, therefore, be reversed. which would supersede the necessity of examining the other question. But as it has been fully argued, and will doubtless arise, should the cause be again tried, it may not be amiss for me to express my opinion upon it.

2. By the 22d section of the act of the 20th of April, 1818 (6 Bior. & D. Laws, 306 [3 Stat. 433]), upon which the libel is founded, the collectors are required "to cause at least one package out of every invoice, and one package at least out of every fifty packages, of every invoice of goods, wares, or merchandise imported into their respective districts, to be opened and examined; and if the same be found not to correspond with the invoice thereof, or to be falsely charged in such invoice, a full inspection of all such goods, wares or merchandise, as may be included in the same entry, shall be made; and if any package is found to contain any article not described in the invoice, the whole package shall be forfeited." It is necessarily implied in the bill of exceptions, from the statement of the objection, that in point of fact, the entry at the custom-house did not correspond with the invoice. And the point of inquiry is, whether the judge erred in submitting to the jury the question, whether such difference proceeded from accident or mistake, and not from an intention to defraud the revenue?

I did not understand the counsel for the claimant as contending that, under the provisions of the act of 1818, this would.be a proper inquiry for the jury. But it is said, that the proviso to the 67th section of the act of the 2d of March, 1799, is still in force, and applicable to the case. The enacting clause in this section authorizes the collector, after entry made of any goods, &c. on suspicion of fraud, to open and examine, in the presence of two or more respectable merchants, any package or packages, and if found to differ in their contents from the entry, then the goods, wares, or merchandise contained in such package or packages shall be forfeited. Provided, that the said forfeiture shall not be incurred, if it shall be made to appear to the satisfaction of the collector, &c. or of the court in which a prosecution for the forfeiture shall be had, that such difference proceeded from accident or mistake, and not from an intention to defraud the revenue. If this proviso is to be considered in force, the question was properly submitted to the jury. For although the proviso in terms refers the question to the court, yet at the time this act was passed it was generally understood, that seizures upon land as well as upon the water were to be tried by the court. And as under the decision of the supreme court seizures on land are now to be tried by a jury, it would be no more than a reasonable construction of this proviso to consider the jury as substituted in the place of the court to try the question of mistake or accident.

But I think this proviso cannot be considered in force, but is repealed by implication by the act of 1818. It is true, this latter act purports to be supplementary to the act of 1799. And it is admitted, that a repeal by implication of a former by a latter statute, is not to be favoured. But such effect and operation is indispensable in some cases. As when the subsequent statute is inconsistent with the former, and the two cannot be reconciled. So where the latter is on the same subject matter with the former, and introduces some new qualifications, or modifications; the former must necessarily be repealed, the two cannot stand together. And in most cases the question resolves itself into the inquiry, what was the intention of the legislature? Did it mean to repeal or take away the former law, or was the new statute intended as merely cumulative? Affirmatives in stat-

utes that introduce new laws, imply a negative of all that is not in the purview. So that a law directing a thing to be done in a certain manner, implies that it shall not be done in any other manner. 6 Dane, Abr. 591, 593, cases there cited.

Let us test the present case by these rules. The subject matter of the 22d section, of the act of 1818, is the same with that of the 67th section of the act of 1799, viz.: To ascertain whether the contents of the packages corresponded with the entries made at the custom-house, and to declare the whole package forfeited when they disagree. But the mode and manner in which this is to be ascertained, and the duty imposed upon the collectors of the customs in relation thereto, differ in the two acts. In the act of 1799, it is left discretionary in the custom-house officers, to make the examination or not. It is made lawful for them so to do when fraud is suspected; and this examination is to be made in the presence of two or more respectable merchants. The examination in this case is bottomed on the suspicion of fraud. And under the proviso the collector and naval officer, as well as the court, are authorized to judge whether the difference proceeded from accident or mistake; and not from an intention to defraud the revenue. Under the act of 1818, it is made the duty of the collectors in all cases, whether fraud is suspected or not, to cause to be opened and examined, at least one package out of every invoice, and one package at least out of every fifty packages of every invoice; and the only inquiry he is authorized to make on a full inspection of the goods, is whether the packages contain any articles not described in the invoice; nothing is said about fraud or accident. The forfeiture is declared to have been incurred, when the fact of such difference between the entry and the invoice is found to exist. Would the collector be authorized under the act of 1818, to inquire whether the difference arose from mistake or accident, and to relinquish the seizure if it should be so found? I apprehend not. But if the proviso remains in full force, it preserves the power and authority of the collector in this respect, as well as that of the court; both are coupled together, and must stand or fall together. Under the act of 1818, a different tribunal is expressly substituted, to determine whether the difference arose from mistake or accident, and not from fraud. By the 25th section it is enacted, "that all penalties and forfeitures incurred by force of this act, may be mitigated or remitted in the manner prescribed by the act of the 3d of March, 1797." (2 Bior. & D. Laws, 585 [1 Stat. 506]). By which power is given to the secretary of the treasury, "to mitigate or remit, fines, forfeitures, or penalties, or any part thereof, if in his opinion the same shall have been incurred without wilful negligence, or any intention of fraud in the persons incurring the same." This is the very inquiry

authorized by the act of 1799, to be made by the collector or by the court. And when the act of 1818, submits this question to the decision of another tribunal, it is, within the authorities I have referred to, an implied repeal of the former provision on the same subject.

This was undoubtedly a question resting in the sound discretion of congress; and many weighty considerations might be suggested as affording reasonable grounds for the substituted provisions on this subject. Under the law of 1799, when the court decided the question, there must have been either an entire acquittal, or a total forfeiture. Under the authority given to the secretary of the treasury, he may remit in whole or in part, so as to meet the equity of the various cases that may occur. He is entrusted with equitable powers to grant relief, when by the letter of the law a penalty, or forfeiture, had been incurred. It is not an unlimited discretion, however, with which he is intrusted; he can only grant relief when the forfeiture has in his opinion been incurred, without wilful negligence or any intention of fraud.

That it was intended by the act of 1818, to repeal or do away the proviso to the 67th section of the act of 1799, as well as the enacting clause, is strongly corroborated by the 15th section of the act of 1st March, 1823 (2d Sess. 17th Cong. c. 20 [3 Stat. 729]). The enacting clause here, is substantially the same as the 22d section of the act of 1818; but to which is added a proviso, "that the secretary of the treasury be, and he is hereby authorized, to remit the said forfeiture, if in his opinion the said article was put in by mistake or without any intention to defraud the revenue." This is no more than incorporating by way of proviso to this section, what was contained in the act of 1818, by reference to the act of 1797, where general power is given to the secretary of the treasury to grant relief in such cases. Should a seizure be made under the 15th section of the act of 1823, for want of a correspondence between the invoice and the package, it would not I presume be contended, that upon a trial for the forfeiture, it would be a question for the jury to decide, whether this arose from mistake, and without an intention to defraud the revenue. And if not under this act, I am unable to discover why it would be proper under the act of 1818; which contains the same provision, although in a little different form and shape. Under both acts, I consider the secretary of the treasury the only proper authority to decide, whether the want of correspondence between the package and invoice, arose from mistake and not design; and that the court below erred in submitting this question to the jury. If such variance did in point of fact exist, the law has pronounced the forfeiture, and relief is only to be had through the secretary of the treasury.

The judgment of the district court must therefore be reversed.