## CATHARINE A. HAMBLETT Apt. *versus* DAVID HAMBLETT.

A party who has received a legacy under a will, cannot be permitted to contest the validity of such will, without repaying the amount of the legacy, or bringing the money into court. And the rule applies even if the party was a minor when the legacy was received.

The introduction of immaterial evidence furnishes no ground for a new trial.

A distinct admission of a fact, made during the pendency of a negotiation for a compromise, may be given in evidence; but an offer of compromise itself is inadmissible.

An acknowledgement, by a party to an appeal from a decree approving a will, that others interested in the estate are to pay a part of the expense of the appeal, is sufficient to make their acts and declarations evidence against such party.

If evidence is admitted on trial which proves to be incompetent, and the jury are directed to disregard it, the admission furnishes no ground for a new trial, unless there is reason to believe that the evidence improperly influenced the verdict.

The acts and admissions of a minor, relative to the subject matter of a suit, are admissible in evidence against him. The infancy of the party may be shown to obviate their effect, and the weight to be attached to them must depend upon the circumstances of the case.

A witness examined on the *voir dire* may be required to verify his signature to an instrument, and the instrument may then be read in connexion with his examination, for the purpose of excluding his testimony on account of an interest in the event of the suit.

APPEAL from the decree of the judge of probate approving and allowing a certain instrument as the last will of David Hamblett, deceased.

The defence being that the testator was not of sound and disposing mind, an issue, formed for the purpose of trying that question, came before the jury, August term, 1832, when it appeared that on the 30th of December, 1816, said David Hamblett, deceased, executed the instrument in question, and died on the 4th of January following.

On the 28th of said January, Sarah Hamblett, the executrix named in the will, and widow of the deceased, presented it for probate, and it was then proved in common form, and she accepted the trust.

The appellant, who is a daughter of the deceased, and who at this time was a minor, on the 11th day of November, 1829, having then recently arrived of age, made application to the judge of probate for a probate of said will in solemn form, and notice was issued for that purpose, which was served on Sarah Hamblett, the executrix, but she neglecting to appear, the appellee, who is the residuary legatee, was admitted to support the will, and it was proved and decreed to be the last will and testament of the deceased, from which decree this appeal was taken.

By the will, the testator, among other things, gave to

the widow, Sarah H. the use of all the real and personal estate until the appellee, then a minor, should arrive at the age of twenty-one years. To his daughter Sarah Butler, wife of Manly Butler, one hundred dollars. To his daughters Phebe, Louisa, and Catharine, $250 each, payable when they should respectively arrive at the age of eighteen years—and to his son David the residue of his estate.

Phebe afterwards married Enoch Marsh, and Louisa died after arriving at the age of twenty-one, unmarried.

Upon the trial of the issue, the appellee offered evidence, that since the pendency of the appeal he employed a person to call on the appellant, in order to effect a compromise; that the appellant declined making any settlement, and alleged as a reason that if she dropped the suit, Butler and Marsh would pay no part of the costs, but if she went on they would pay their part of the expense. Also, that at another time she said she should not have petitioned to set the will aside but for the undutiful conduct of the appellee towards her mother, in requiring her to render an account of her administration in the probate office, and in other matters which she specified.

The appellee then offered in evidence a release from Butler and wife to said Sarah Hamblett, as executrix, dated January 29, 1817, and a release from Marsh and wife to the appellee, dated May 28, 1822, by which they released all their right and interest in the estate, they having received their legacies under the will.

He proved, also, that on the 28th January, 1828, being a short time before the appellant became of age, he paid her the legacy given her by the will—that on that occasion said Enoch Marsh executed a bond to the executrix that the appellant should execute a release of her right in the estate when she became of age—that it was agreed that the executrix should assign said bond to the appellee, but that the assignment was not then execut-

ed, and that the executrix afterwards, on the 4th of August, 1830, refused to execute such an assignment.

The appellee also offered in evidence the receipts of the appellant, of said Butler and wife, Marsh and wife, and the executrix, all dated Oct. 14, 1828, in which they respectively acknowledged that they had received of the appellee their shares of the estate of Louisa, then deceased.

To the admission of the foregoing evidence the appellant objected, but it was received, subject to future consideration.

The appellee also offered in evidence the deposition of Mary Palmer, in which she testified, among other things, that on the day of the execution of the will she was at the house of the testator, and that " his discourse was satisfactory to her." To this part of the testimony the appellant objected. The evidence was admitted, but the court in their instructions to the jury directed them not to rely upon any evidence of opinion as to the sanity or insanity of the testator, except what was derived from the testimony of the subscribing witnesses to the will.

John Marsh, offered as a witness by the appellant, being asked by the counsel for the appellee, whether he was not bound to pay a part of the costs, answered that he did not know that he was, but on being shown a bond, signed by him, to the judge of probate, for the prosecution of the appeal, he answered that he had no interest in the suit unless it arose from his having signed said bond. The appellant's counsel objected to the introduction of the bond, after the witness had been asked if he had any interest and answered as above stated, but the appellee was permitted to put in the bond for the purpose of excluding the witness.

The jury returned a verdict that the testator was sane, and the appellant moved for a new trial.

The counsel for the appellee, in the probate court, and again in this court on the appeal, moved that the appel-

lant be required to pay into court the amount of the leg- <span>Hamblett<br>v.<br>Hamblett.</span>
acy received by her under the will, before proceeding to
contest the same, but no order was made ; and upon the
motion for a new trial by the appellant, this motion for
the payment of the legacy into court was renewed.

*Porter,* for the appellant.

*C. H. Atherton,* for the appellee, referred to Roscoe on
Evid. 28, and cases there cited ; 1 Bing. 45, *Harrison* v.
*Vallance* ; 1 Starkie's Rep. 372, *Robson* v. *Andrade* ; 2
Starkie's Ev. 40 ; Phillimore's Rep. 412, (Phil. Ed.)
*West & Smith* v. *Willey* ; Addams' Rep. 95, *Evans* v. *Knight
& Moore* ; ditto, 289, *Landon* v. *Nettleship* ; ditto, 367,
*Brogden* v. *Brown* ; Phillimore, 239, *Newell* v. *Weeks* ; 4
Esp. 50, *Stephenson* v. *Walker* ; 1 D. & E. 648, *Borthwick* v.
*Carruthers* ; 1 Esp. 172, *Bristow* v. *Eastman* ; Addams, 140,
*Bell* v. *Armstrong* ; ditto, 514, *Braham* v. *Burchell.*

PARKER J.   The appellee, in this case, moved in the
probate court, and afterwards in the supreme court of
probate, on the appeal, for a rule requiring the appel-
lant to bring into court the legacy which she had receiv-
ed under the will, before proceeding farther to contest
its validity, and this motion is now renewed, and presents
a preliminary question, before considering the objections
to the verdict, raised by the appellant.

It has been repeatedly held in the English ecclesias-
tical courts, that a legatee, who has received a legacy by
virtue of a will, must bring in the legacy before being per-
mitted to contest the will.    1 Addams, 365, *Bell* v. *Arm-
strong, and cases cited.* 3 Addams, 243, *Braham* v. *Burchell.*

The rule is founded in principles of justice, and seems
to be sound law.  The receipt of a legacy is, *quoad* the le-
gatee, an affirmance of the will.   It is acting under it—
taking the benefit of it, and treating it as a valid instrument.

Such affirmance, however, is not an absolute bar against
the party seeking to contest the will, though under cir-
cumstances of delay, connected with other circumstanc-

es, it has been held to preclude the party from contesting the will afterwards. 1 Addams, 375 ; 2 Phillimore, 230, note b, *Hoffman* v. *Norris.*

But if the party so having received a legacy, afterwards desires to contest the will, there is great reason that he should tender to the executor, or bring into court, the amount received. The security of the executor may require this, and if the party can withhold it, he may at one and the same time treat the will as valid, and invalid. Valid as authorizing him to hold that portion of the estate to which he would be entitled under it, at the same time he is alleging, that from the insanity of the testator, or some other cause, it is wholly void and inoperative.

In ordinary cases, therefore, when a party seeks to repudiate a will as insufficient, he must do so wholly and entirely, by refusing, until it has been established, to receive the benefit of it ; or if any thing has been received, by returning it to the executor, or placing it in the custody of the court, that the executor may have it in case the judgment should be against the validity of the will.

Nor do we see any thing in this case to make it an exception to the general rule. True, the appellant when she received this legacy, was a minor. But she was then, although not of legal age, of an age to exercise some discretion. She was then more than eighteen years of age, at which period her legacy was payable to her by the will. She was aided by her friends and connexions, and one of them actually agreed to be bound that she should execute a release when she became of age. The legacy was fairly paid, and, for ought which appears, the avails are still in her possession. If under these circumstances she chooses, on coming of age, to reject the provisions of the will, and contest its sufficiency, the law secures to her the right so to do, but there is no more reason why she should hold the money already received, than if she had been of full age when she received the legacy.

The law authorizes an infant to avoid contracts made during minority, but there are cases at law which show that if the contract has been executed, and the infant will avoid it, he must restore the consideration. An infant cannot ratify a lease to himself, and avoid a covenant in it to pay rent. Bac. Abr. Leases, B. Nor can he hold lands conveyed in exchange, and avoid the transfer of those with which he parted. Co. Litt. 51, b ; 4 Cruise, 142. And it is suggested, 1 N. H. Rep. 37, *Roberts* v. *Wiggin*, that where an infant takes a deed of land, and gives back a mortgage to secure the purchase money, he cannot avoid the mortgage, and hold under the deed.

In 15 Mass. 359, *Badger* v. *Phinney*, it is held, that where goods are sold to an infant, who represented himself as of full age, on credit, and he avails himself of his infancy to avoid the payment, the vendor may reclaim the goods, as having never parted with his property in them. And that such infant, having sold and delivered goods, and received the money for them, must restore the money before recovering the goods.

In *Roof* v. *Stafford*, 7 Cowen, 182, the same principle is recognized and approved.

It is particularly necessary, at the present day, when emancipation is so common, and when minors, who may not be known as such, are so frequently sent forth by their parents to act for themselves without the intervention of a guardian, that courts should be careful that infancy, while it furnishes protection to the minor, should not be made a means of fraud and oppression upon others ; and it is believed that no sound reason exists why infancy should enable a party to hold a legacy, received under a will, and at the same time reject and contest the will, as void.

We are of opinion, therefore, that the motion of the appellee was well founded, and that the appellant should have been required, before proceeding in the appeal, to repay the legacy, or place it under the control of the court. This is a simple and direct mode of enforcing the

justice of the case, and might be necessary for the secu-rity of the executor, or in this case of the residuary legatee.

But the case having been tried before the determina-tion of this question, we have proceeded to consider the exceptions taken by the appellant.

It is objected, that upon the trial evidence was in-troduced to show the acts of Mrs. Hamblett, the execu-trix, who caused the will to be proved, and of Butler, and Marsh, who in right of their wives were entitled to, and have received legacies under it.

To this it is answered on the part of the appellee, that the evidence showed these persons interested in this ap-peal, and moreover a combination and conspiracy, be-tween them and the appellant, to defeat the will.

The evidence, however, seems to fall short of showing the executrix a party to such combination, though such may have been the case.

The facts are that the appellant, on being applied to, declined making a compromise without the consent of Butler and Marsh, as they were to pay a part of the ex-pense---and upon another occasion, she said she should not have petitioned to set the will aside, but for the un-dutiful conduct of the appellee towards her mother.—Butler and Marsh received the legacies payable to their wives, and executed discharges. The appellant gave a receipt for her share, and she being then a minor, Marsh gave a bond to the executrix, that the appellant should release when of age, the executrix agreeing to assign this bond to the appellee. This she afterwards refused to do. The executrix, the appellant, Butler and wife, and Marsh and wife, gave receipts for their respective shares of Lou-isa's portion. And the executrix has not defended this application for probate, although notified of it.

The receipts by Butler and Marsh furnish no evidence of combination against the will, but the reverse. The receipt of the appellant, and bond of Marsh, and the agreement of the executrix to assign the bond, stand up-

on the same ground, as do, also, the receipts of each for their shares of Louisa's estate. All this seems to have been done in good faith.

The refusal of the executrix to assign the bond cannot be considered evidence of a conspiracy to defeat the will.

It cannot prove her a party to the appeal, and there is no other act or omission by her, tending to show that she is in favor of the appeal, unless it be a neglect to defend. But in both these matters she stands alone. There is no evidence to connect her with the others.

Nor does the declaration of the appellant, that she should not have contested the will but for the undutiful conduct of the appellee, show the mother prosecuting this proceeding with her. It is merely evidence of a disposition, on the part of the appellant, to punish the appellee. All this does not prove the mother a party to any combination, nor show that she is to pay any costs, or is otherwise connected with this appeal.

The evidence, then, is not sufficient to connect the executrix with this proceeding, as a party, and this position is not supported. But the attempt to show her a party was only introductory to other evidence, and we must consider the nature of that evidence.

The only testimony relative to the acts of the executrix is that she received her legacy under the will and her share of Louisa's portion under it; and that she was assenting to the appellant's receiving her legacy and share. But of what importance was this evidence, either on the one side, or the other? It amounts to no more than this, that she treated the will as a valid will, and that she did so was necessarily in evidence, for it appeared, of necessity, that she, as executrix, presented the will for probate, and caused it to be proved in common form. This fact is the very foundation of the present proceeding—appearing on the face of the appellant's case—and the executrix, having done this, could do no

other act of greater significance, to show that she regarded the will as valid.

We see not, therefore that the evidence in relation to the executrix was of any importance—nor how the appellant could have been prejudiced by the admission of it, as it proves nothing more than was apparent in the very opening of her case. It is well settled, that the admission of immaterial evidence furnishes no ground for a new trial.— *Jewett* v. *Stevens*, ante, 80 ; 4 N. H. Rep. 69, *Wiggin* v. *Damrell* ; 9 Pick. 176, *Prince* v. *Shepherd* ; 6 Cowen, 445, *Norris* v. *Badger*.

The practice of the English C. C. Pleas goes even further than this, as that court refuses to grant a new trial, where evidence has been admitted which ought to have been rejected, if, exclusive of such evidence, there be enough to warrant the finding of the jury. 6 Bing. 561, *Doe* v. *Tyler* ; 2 Moore, 153, *Nathan* v. *Buckland* ; 1 Taunt. 14, *Hosford* v. *Wilson*.

And the U. S. Sup. Court hold, that upon motion for a new trial, after verdict, if upon the whole case the verdict is substantially right, no new trial is to be granted, although there may have been mistakes committed at the trial. 1 Peters, 183, *McLanahan* v. *The Universal Insurance Co*.

The evidence relating to Butler and Marsh stands upon somewhat different ground from that respecting the executrix. There is nothing on the face of the appellant's case to show that they treated this as a valid will, and the admission of this evidence, if justified, must be either upon the ground that the appellant's declarations show them so far connected with the case as to make their acts admissible in evidence, or else that they are admissible as the acts of persons interested in the estate, though not parties to the record, or the application.

It has been objected, on the part of the appellant, that her declaration, as given in evidence, was made on a treaty of compromise, and so not itself admissible. But

it is now well settled that a distinct admission of a fact, during an attempt at compromise, may be given in evidence, though an offer, made for the purpose of effecting a settlement, cannot be, and the reason for the distinction is very satisfactory. Bull. N. P. 236 ; 4 N. H. Rep. 508, *Sanborn* v. *Nielson* ; 2 Stark. Ev. 38 ; 2 Pick. 290, *Marsh* v. *Gold* ; 4 Pick. 377, *Gerrish* v. *Sweetser* ; 7 Wendell, 354, *Hyde* v. *Stone* ; 4 Conn. 142, *Hartford Bridge Co.* v. *Granger*.

It has even been held, that an offer of a specific sum, by way of compromise, is admissible in evidence, unless accompanied with a caution that the offer is confidential. 1 Moody & Malkin, 446, *Wallace* v. *Small*. The soundness of this may, however, well be doubted.

But, furthermore, the facts in this case do not sustain the position that a treaty of compromise was pending. The agent for the appellee proposed a negotiation for compromise, but it was refused. There was no treaty on foot, as the proposition was promptly rejected, and the reason given for that rejection, the party having volunteered a reason, is in this case, a fact of which the adverse party has a right to avail himself. It partakes in no degree of an offer to buy peace, but is the reverse of it.

The evidence, then, is, that the appellant said if she dropped the suit Butler and Marsh would pay no part of the cost, but if she went on they would pay their part of the expense ; and this, connected with their interest in the estate, sufficiently establishes, as against her, that they are jointly interested with her, or in other words are in fact parties in this appeal, though not on the record. Their acts and admissions, relative to the subject matter, were therefore properly in evidence. 1 Bing. 45, *Harrison* v. *Vallance* ; *Dyke* v. *Aldridge* cited 7 D. & E. 665 ; 11 East, 584, note c. ; 16 East, 143, *Bell* v. *Ansley* ; 1 Wils. 257, *Hanson* v. *Parker* ; 3 Camp. 465, *Smith* v. *Lyon* ; 3 Atkins, 361, *Tucker* v. *Phipps* ; 1 Phil. Ev. [75] ;

12 Mass. 163, *Tyler* v. *Ulmer*; 1 Pick. 192, *Atkins* v. *Sanger*.

It becomes unnecessary to examine the second ground suggested, viz. that the acts of all persons who have an interest in the event may be evidence. There are, undoubtedly, authorities which countenance the position, that the acts and admissions of all interested in the estate are competent evidence.

If, however, none of the evidence was admissible, it would be very questionable whether the motion for a new trial could be sustained on account of its reception. The whole force and effect of it, as it relates to Butler, Marsh, and the executrix, is to show their opinions that the testator was sane. It was not contended that any acts of affirmance, by either, or all of them, could make the will valid as against the appellant, so as to bar her from prosecuting this appeal. It could be used only to show that they treated the will as valid and binding on them, and that the inference, therefore, was, that they were heretofore of opinion that the sanity of the testator could not be questioned.

In this view, it would seem to stand upon the same ground as the matter which forms another objection on the part of the appellant, which is to the admission of the testimony of Mary Palmer, that she had a conversation with the testator, on the day of the execution of the will, and that " his discourse was satisfactory to her."

This is wholly immaterial, unless it be as evidence of the opinion of the witness, that the testator was sane. But the case finds that the judge expressly directed the jury not to rely upon any evidence of opinion, as to the sanity or insanity of the testator, except what was derived from the testimony of the subscribing witnesses to the will.

On the supposition that this testimony of Mary Palmer, to matter of opinion, or rather to matter from which her opinion of sanity is to be inferred, was incompetent—

which is not conceded, if sufficiently connected with facts —the question arises whether this furnishes any ground for a new trial, the court having thus directed the jury.

Upon this subject it did not seem to us, at first, that there could be two opinions.

But in *Penfield* v. *Carpenter*, 13 Johns. 350, in error, on certiorari to a justice's court, it appeared, that at the trial a witness was called, on the part of the defendant, to testify to the defendant's declarations made to the witness, and the testimony being objected to, the justice decided that the witness might go through with his testimony, and he would then inform the jury what part was admissible, and what not—and the justice informed the jury that this testimony was inadmissible, and that they ought not to take any notice of it as testimony. Another witness was permitted to swear to hearsay, and the justice told the jury that what the witness had sworn was not evidence. The court reversed the judgment, saying, " the admission of such testimony was illegal and dangerous, and no subsequent caution or advice, by the justice, that the jury ought to disregard what the witnesses had sworn, can cure the irregularity. The law forbids such testimony, because it *may have* an influence upon honest jurors, who are unconscious of the impressions which they retain, notwithstanding the effort of the court to obliterate them."

So in *Irvine* v. *Cook*, in error, 15 Johns. 239, where hearsay evidence was given, but not admitted to the jury as evidence, the court held that improper evidence ought not to be allowed to be given in the presence of the jury, although they are afterwards directed to disregard it, and reversed the judgment.

A similar decision was made in *Haswell* v. *Bussing*, 10 Johns. 128, where the justice returned that he admitted one of the parties as a witness, *de bene esse*, but that he afterwards disregarded the testimony, not considering it as evidence in the cause.

However irregular the proceedings in those cases may have been, and however proper the decisions may be in New York, as applied to their courts of justices of the peace, we cannot adopt the broad principle there laid down, as sound law, applicable to all cases, and no authority is cited as sustaining those cases, nor, after a very diligent search, has any such authority been found elsewhere.

The reason, that the testimony so given in presence of the jury, *might have* an influence, though they are directed to disregard it, would apply with equal force in all cases where any thing irrelevant may have crept in during the course of the trial, and would entitle parties to a succession of new trials, until no sentence should have been uttered which by any possibility might have an undue influence, though the jurors were unconscious of any influence.

It is apparent that the principle cannot be carried to this extent, and other authorities show it must fall far short of it, even if it can be supported in any degree.

The rule respecting the testimony of interested witnesses, as laid down by Starkie, and Phillips, is that where it is discovered incidentally in the course of a cause, that the witness is interested, his evidence will be struck out, although no objection has been made to him on the *voire dire.* 2 Stark. Ev. 757 ; 1 ditto, 121 ; 1 Phillips, 96, [101] ; and to this point there are several authorities ; 2 Camp. 14, *Howell* v. *Lock ;* 1 Esp. Rep. 37, *Stone* v. *Blackburn* ; 1 D. & E. 719, *Turner* v. *Pearte ;* 6 Johns. 538, *Swift* v. *Dean* ; 7 Wendell, 180, *Tallman* v. *Dutcher.*

In such case, though the statement of the witness has been heard, the court " direct the jury that he is no witness, nor any regard to be had to his testimony." 2 Yeates, 39, *Bank of America* v. *Wykoff.*

So where evidence which is competent in one view,

and yet from its nature or connexion proves something else, which would not be competent, and which might possibly have an effect upon the jury, the evidence is admitted, and the jury directed not to regard it as evidence, except for the purpose for which it is admissible. 7 Bing. 362, *Manning* v. *Clement* ; 8 ditto, 376, *Willis* v. *Bernard* ; 3 Conn. Rep. 9 *Barker* v. *Brace.*

So where the confession of a prisoner implicates others, charged in the same indictment, the whole evidence is introduced, and the jury directed to disregard it as to the others. 4 Car. and Payne, 215, *Rex* v. *Hearne, et a.* ; ditto, 221, *Rex* v. *Cleaves* ; ditto, 250, *Rex* v. *Fletcher* ; 1 Phil. Ev. 82. [88.]

In all these cases the introduction of the evidence might have an improper influence upon the jury, if they disregarded their duty, and the direction of the court.

There must be many cases where evidence is admitted, and confined in its operation to a particular point. 7 Peters, 119, *Douglass* v. *Reynolds.*

Cases are of daily occurrence, also, where evidence is admitted, which, from a failure to connect it with other evidence, with which it had a necessary connexion in order to be relevant, eventually turns out to be incompetent. The utmost caution cannot always prevent the introduction of evidence, which in the course of the trial is discovered to be clearly inadmissible, and if, in such cases, its introduction was to be regarded as ground for a new trial, on the application of the party objecting, the practice should be to stop the case, and begin *de novo* to another jury, for however strongly the jury were directed to disregard the testimony, it could not be shown that it had not had an influence upon the verdict, of which the jurors were not conscious—and yet it is not believed, that a practice of stopping a trial upon such account, ever prevailed in any court.

Were there no other authority, then, we could not consent to adopt the broad principle laid down in the cases in New York.

But a more direct decision is found, 6 Binney, 283, *Commonwealth* v. *Shepard*, where an objection was taken, that an improper question had been put to a witness, and an answer admitted which might have had a strong effect in proving a point in the case, respecting which the evidence was not competent. The judge who tried the case directed the jury not to regard it as evidence in that particular. Ch. Jus. Tilghman declined considering whether the course of the cross examination had made the question and answer competent, because the judge afterwards charged the jury to disregard it with reference to the point respecting which it was supposed it might have an undue influence. He said the force of what the witness said " was therefore taken off, just as in the common case of a witness, who after being sometime examined is discovered to be interested in the cause, when the court tells the jury that all which has been said is to go for nothing;" and in answer to the objection, that it may not be in the power of the judge to remove from the minds of the jury the impression, which the evidence had made, he said, it was not to be supposed that the jury will disregard the court's direction in matters of law.

We have no hesitation in holding the principle of this decision to be sound, and it is in accordance with the uniform practice of this court heretofore, nor has such practice, before this, been supposed to furnish good ground of exception. To hold otherwise would introduce difficulties, for which any benefit to be derived from such decision would furnish no adequate equivalent.

This rule respecting the introduction of incompetent testimony may admit of exceptions. If the testimony be of a nature to excite popular prejudice, and if there is good reason from the verdict to suppose that it must have influenced the jury improperly, notwithstanding the direction of the judge that it was to be disregarded, such case might furnish an exception, and the granting of a

new trial be a proper exercise of the discretion of the court. But in this case, the judge who tried the cause states that there is no ground for supposing that this testimony of Mary Palmer affected the verdict either way, and it was of a nature to have the least possible weight, if no direction had been given in relation to it.

As to the direction of the judge relative to evidence of opinion, it may be proper to remark that we do not intend to be understood as establishing this as the rule. The weight of authority seems to be in favor of admitting the opinions of others than the witnesses to the will, if connected with evidence of the facts upon which those opinions are founded. 3 Stark. Ev. 1707, *in notes* ; 4 Conn. Rep. 203, *Grante* v. *Thompson* ; Vide, also, 8 Mass. 371, *Hathorn* v. *King* ; 4 Mass. 594, *Buckminster* v. *Perry* ; 2 W. Black. 365, *Lowe* v. *Jolliffe*. It remains to be considered, whenever the question shall directly arise, whether this is not the most eligible and proper course in questions of this nature ; but upon this matter it is not now necessary to make a decision. However this may be, the appellant has no reason to complain of the rule as laid down in this case, and the appellee of course raises no objection.

Another objection is to the admission in evidence of the receipts of the appellant, for her shares in the estates of the testator and of Louisa, she being a minor, at the time of the transaction.

Here again the only effect of the evidence was to show opinion, and it was therefore within the direction on that subject of the jury. But farther, the general rule is that the acts of a party relative to the subject matter are admissible in evidence, and we find nothing to warrant us in making a minor an exception.

The contract of a minor may not bind him, so that it can be enforced at law, but the contract is uniformly admitted in evidence, and the minority is only in answer, or defence. So the acts of a minor may be given in evi-

dence to show him guilty of a trespass, or a crime, and no case has been found to show that his admissions may not be proved for the same purpose.

What weight is to be attached to the evidence is to be settled upon the whole case, and stricter caution may be requisite in this respect on account of the minority.

The receipts were not attempted to be used as a bar to this proceeding. Like any other acts, relative to the subject matter of the case, they were admissible testimony, and it was for the appellant to allege her infancy to obviate, as far as possible, their effect. 1 D. & E. 648, *Borthwick* v. *Carruthers*. The evidence that she was a minor was admitted in answer, or accompanied the introduction of the receipts, and how far they should weigh as an admission of sanity by her, under such circumstances, the jury might properly consider, if they did not lay it out of the case as evidence of opinion.

It is evident that much more importance has been attached, by both parties, to all the foregoing evidence, than is warranted by its intrinsic value.

The only remaining exception is to the mode adopted to exclude the testimony of Marsh, by exhibiting to him the bond he had executed for the prosecution of this appeal, and on his admitting the signature, and reading it to show his interest, although he had at first said he did not know that he was bound to pay any part of the costs.

The practice, undoubtedly, was formerly, that the party objecting to a witness as interested, had an election to show that interest, either by examination upon the *voire dire*, or by other testimony, but that he must elect between those modes, and could not adopt both. Several cases are collected. 2 Sark. Ev. 756, n. 2.

And it has even been held, that after a party had attempted to prove a witness interested, by other witnesses, and had failed, that the witness could not be set aside, though it should appear in the course of his testimony that he was interested. 1 Root's Rep. 222, cited

in 1 Day's Esp. 38, n. And that after an unsuccessful attempt to exclude him by the testimony of other witnesses, the witness cannot, on cross examination, be enquired of respecting his interest, for the purpose of affecting his credibility. 6 Conn. Rep. 231, *Chance* v. *Hine*.

But in 2 Stark. Ev. 756, it is said, that if the witness discharge himself on the *voire dire*, the party who objects may still afterwards support his objection by evidence, as a part of his own case. And in a note (p.) " it is said that it would manifestly be unjust, to preclude the party from impeaching the competency of a witness by satisfactory evidence, merely because he had taken the objection in the first instance in the proper mode, and the witness had been hardy enough to misrepresent his situation."

It would seem, if the evidence of a witness is to be rejected, after it is put in, where it is discovered *incidentally* that he is interested, (*auth. ante.*) there can be no good reason why the party may not offer *direct* proof of interest, for the purpose of defeating the evidence, although there has been a previous attempt to exclude— and if he may, the rule confining the party to an election, in the first place, is no longer of much value.

But however this may be, we are of opinion that there is no objection to requiring a witness, examined upon the *voire dire*, to verify a purpose which shows his interest, and then reading the paper in connexion with his evidence. This is not in fact adopting both modes. The paper makes a part of the *voire dire* examination.

It has been settled that a witness may be examined upon the *voire dire* as to the contents of a will, deed, or other written instrument, supposed to contain evidence of his interest, without the production of the paper itself. Phil. Evid. 96, [101] ; 2 Camp. 14, *Howell* v. *Lock* ; 1 Stark. Ev. 120 ; 2 ditto, 756 ; 5 Conn. Rep. 258, *Stebbins* v. *Sackett* ;. But if the witness on such examination produce the instrument it is to be read. 2 Stark. Rep. 433, *Butler* v. *Carver*.

And as the instrument is the best evidence, we see not why, if it is presented to him, and he verifies the paper, it should not be read in connexion with his examination, the same as if he had produced it himself.

*Decree of Judge of Probate affirmed.*