Rogers v. Hackett.

# ROGERS v. HACKETT.

A witness testified that while he held a note indorsed by the payee, he had a conversation with him respecting the note, and that the indorser knew, by the conversation between them, that the witness had made no demand upon the maker for payment of the note. *Held*, that this was competent evidence that the indorser knew that no demand had been made.

In a suit by the indorsee against the indorser of a promissory note, a witness testified that at the time of the indorsement, the indorser and indorsee both knew that the maker was embarrassed. *Held*, that this was immaterial evidence and furnished no ground for setting aside the verdict.

If the indorser of a note, with the knowledge that there has been no demand upon the maker, promise the indorsee to pay the note, such promise may be given in evidence, in a suit by a subsequent indorsee against the indorser.

ASSUMPSIT, against the defendant, as indorser of two promissory notes, dated March 2, 1843, one for $50, and one for

Rogers *v.* Hackett.

$18.30, signed by one John C. Weymouth, and payable to the defendant or order, on demand, with interest.

The notes were indorsed by the defendant, in blank, and were so indorsed by him, July 3, 1843, and passed to a Mr. Eastman, in part payment of an execution which he held against the defendant's father. There was no evidence of a demand on Weymouth, or notice to Hackett of non-payment, further than appears from the fact hereafter stated. The notes remained the property of Eastman till he transferred them to the plaintiff, in September, 1846. Eastman testified that when the notes were indorsed to him, by the defendant, he knew that Weymouth's property was all mortgaged, and he understood, from the defendant's statement at that time, that the defendant knew the same fact. He also testified that in December, 1845, he called on the defendant to take up these notes, and give him his own note for their amount; that the defendant said, he (Eastman,) was just as well off with the old notes, as he would be with a new one; and he said the only reason why he was not willing to give a new note, was because he could not work it out of Weymouth as well as if the old notes remained in Eastman's hands; he also said he would pay the notes as soon as he could, but he doubted whether he should be able to do it under eight months; and that he (Eastman,) should have the whole amount by that time. In the winter next after the indorsement of the notes, Eastman told the defendant that he saw no prospect of getting the notes of Weymouth, and he must not look to the defendant for payment; and the defendant replied, that he must not push him, but use him well. In the summer of 1844 or 1845, Eastman told the defendant the matter was lying loose, and he did not like to have it so, and that he could not get payment of Weymouth, did not see any chance to get it of him; and the defendant said that he felt badly about it, and would make it up as soon as he could. Eastman further testified, that the defendant knew by the conversation between them, that he had made no formal demand on Weymouth for the payment of the notes, and that at the first conversation after the indorsement, he told the defendant that he was satisfied he could not get any thing of

Weymouth, and it was of no use to run after him, or make any demand of him.

The defendant objected to the admissibility of the foregoing evidence, which was all shown by parol; and also to its sufficiency to charge the defendant. But it was admitted, subject to the exception; and, by consent, a verdict was taken for the plaintiff, for the amount of the notes; and it was agreed that judgment should be rendered upon the verdict, or the verdict be set aside, and judgment rendered for the defendant, for such sum as he shall be entitled to recover, the case being upon review, according to the opinion of the Superior Court upon the case.

*Perley*, for the defendant. 1. Evidence of the state of Weymouth's property and of the defendant's statements respecting it, made at the time of the indorsement, was inadmissible. *Barry* v. *Morse*, 3 N. H. Rep. 132; 2 Greenl. Ev. § 195.

2. The case shows that there was no demand or notice. To bind the defendant, his promise to pay must be positive and express. 2 Greenl. Ev. § 196; *Borradaile* v. *Lowe*, 4 Taunt. 93; *Tanner* v. *Smart*, 6 Barn. & Cres. 603.

3. This promise was not negotiable, and could not be transferred by indorsement to the plaintiff. *Roberts* v. *Peake*, 1 Burr. 323.

4. The promise was conditional, and the condition was not shown to have been performed. *Tanner* v. *Smart*, 6 Barn. & Cres. 603.

5. The promise, to be binding, must be made with full knowledge that there had been no demand. The witness states the different conversations with the defendant. He could not be admitted to testify that the defendant knew from the conversation that there had been no demand. This evidence is not admissible, upon the principle of *Eaton* v. *Rice*, 8 N. H. Rep. 378, for two reasons. Here the witness recollects and states the conversation; and in *Eaton* v. *Rice* he was permitted to state what he understood the import of the conversation to be, because he had forgotten the words used. The witness here undertakes to state, as a matter of fact, what the defendant understood from

Rogers v. Hackett.

the conversation; in *Eaton* v. *Rice*, he was permitted to state what he understood himself. The conversation, as testified to, does not show nor tend to show that the defendant knew there had been no demand, but rather the contrary; that he supposed there had been a demand, and that he was legally liable. *Farrington* v. *Brown*, 7 N. H. Rep. 274.

*Pierce & Minot*, for the plaintiff. 1. The evidence in regard to the state of Weymouth's property, &c., was admissible, not to control or·vary the legal effect of the indorsement, but to show independent, extrinsic facts which might affect the duty of an indorsee under it, in regard to demand and notice. As, under such an indorsement, it would be competent to submit parol testimony that the maker could not be found, or had left the State, to excuse want of demand, &c.; so it was competent to prove his known insolvency for the purpose of raising the question, what was the duty of an indorsee under such circumstances?

And it was competent to be submitted to the jury as affecting the credibility of the testimony, that the defendant waived demand, &c.; as showing a reason why he should waive demand, as he knew the demand would be useless.

2. The defendant's promise to pay was a waiver of demand, &c. It was express and positive; — "he would pay;" — "he, Eastman, should have the amount."

3. This action is not founded on the defendant's promise to pay, as above, but on his original liability as indorser. That promise is material, not as a foundation for this action, but only as a waiver of a defence which might otherwise be made to it. It was competent for the defendant to waive and remit to Eastman the objection for want of demand, &c. He did so by his promise; and once thus waived it is removed, and cannot be revived.

The promise in these cases is like a promise in cases of the statute of limitations. *Betton* v. *Cutts*, 11 N. H. Rep. 170; *Soulden* v. *Van Rensselaer*, 9 Wend. 293.

4. The promise in December, 1845, was that "he, Eastman, should have the whole amount in that time," that is, eight months.

---

Rogers *v.* Hackett.

---

That time had expired before the commencement of the original suit, September 26, 1846. ⁎

5. The testimony of Eastman was admissible, according to *Eaton* v. *Rice*, 8 N. H. Rep. 378. Eastman states part of the conversations, but does not undertake to state all.

But he states generally, without giving the language, that it was such that the defendant knew that there had been no demand, &c.; that the purport of it was to give such information, &c. The evidence was admissible, its credibility being left to the jury.

GILCHRIST, C. J.* The defendant contends that evidence of the state of Weymouth's property, and of the defendant's statements respecting it, made at the time of the indorsement, was inadmissible. In support of this position, reference is made to the case of *Barry* v. *Morse*, 3 N. H. Rep. 132. That case, however, decides merely, that where a note has been indorsed in blank, parol evidence is not admissible to prove, in a suit against the indorser, that he agreed to be liable at all events, without demand of the maker and notice of non-payment. The evidence seems to us immaterial. It cannot affect the rights either of the holder or of the indorser. And as it is merely immaterial, it furnishes no ground for setting aside the verdict. *Hamblett* v. *Hamblett*, 6 N. H. Rep. 333.

The defendant also contends that the promise to pay, even if made as alleged, was not negotiable, and could not be transferred by indorsement to the plaintiff. In support of this position, reference is made to the case of *Roberts* v. *Peake*, 1 Burr. 323. In that case a note was declared on as if it had contained an absolute promise to pay, whereas it appeared upon the face of it, to have been given on two several conditions. It was held to be a note payable, eventually, upon an uncertain contingency, and not to be a negotiable note, within the act of Parliament, which meant and intended an absolute note, payable at all events. The other question in the case was one of variance between the note and the declaration. There is no-

---

* Perley, J. having been of counsel, did not sit.

thing in the case which supports the doctrine that a promise to pay a note, made by the indorser to the holder, could not be given in evidence by a subsequent indorsee, in a suit against the first indorser. No reason occurs to us why the plaintiff should not avail himself of the evidence. An indorser may waive such a defence or not, as he sees fit. After having waived it and surrendered it, upon what principle can he reclaim it? He cannot rely upon this defence as existing or as non-existing, as his caprice or his interest may dictate. There is no need of considering the question whether it could be transferred by indorsement to the plaintiff, for negotiability or non-negotiability cannot be predicated of it. All that can be said of the matter is, that the party has waived the defence, and therefore cannot avail himself of it.

It is said that the promise was conditional, and the condition was not shown to have been performed. But we find no evidence of a conditional promise; but, on the contrary, the defendant promised Eastman that he should have the whole amount in eight months.

The general rule is, that in order to maintain an action against an indorser, it must be shown that there has been a demand of payment upon the maker, and notice to the indorser. But this may be waived by the indorser; and if he do waive it, knowing that there has been no demand, and promise to pay it, nevertheless he will be bound. *Otis* v. *Hussey*, 3 N. H. Rep. 346; *Woodman* v. *Eastman*, 10 N. H. Rep. 366.

Eastman testified, that the defendant knew by the conversation between them that he had made no formal demand upon Weymouth for the payment of the notes. This is a positive statement. If the defendant knew this by the conversation, it must have been so stated in the conversation by Eastman; and whether he said in terms, that he had made no demand upon Weymouth, or whether language was used conveying that idea distinctly, but in different words, is immaterial. It is only necessary for the indorser to know that no demand has been made upon the maker; and as we think that appears clearly enough in this case, there must be

*Judgment on the Verdict.*