## STEWART v. CONNER.

1. An assignee of a judgment, which is afterwards reversed, and remanded by the supreme court for further proceedings, is an incompetent witness for the plaintiff, upon the ground of interest. A witness may be rejected for interest at any stage of the cause, when his interest is discovered.

2. When proof has been made, that a party admitted an account to be correct, the effect of the admission may be destroyed, or impaired, by proof, that it was hastily, or inconsiderately made, without a knowledge of the

facts; but it is not admissible to prove, that in the opinion of others, he is not a man of capacity, or education, to understand long accounts, and is rather dull.

Error to the Circuit Court of Pickens.    Judgment rendered by his Honor Samuel Chapman.

ASSUMPSIT by the defendant, against the plaintiff in error.

The questions presented, arise out of a bill of exceptions. The plaintiff called a witness to the stand, and examined him without objection.   On the next day, in the further progress of the trial, he was again called to the stand by the plaintiff to be examined, to another point of the cause, and defendant proposed to examine him first, as to his interest, which was objected to, because not made the day previous, and it was not stated that the facts had since come to the knowledge of the defendant.   But the witness, who was of counsel for the plaintiff, stated, he had no objection to answering, and denied having any interest.   He also stated, that after the recovery of a former judgment in this case, he with plaintiff's other counsel, took an assignment of a part of that judgment.   That the judgment had been since reversed, and the cause remanded, but that he claimed nothing under the assignment.   The court overruled the objection, that the defendant's objection came too late, but permitted the witness to be again examined for the plaintiff.

The defendant having introduced testimony, tending to prove, that the plaintiff had acknowledged the correctness of certain accounts, which the defendant, and one Jemison, executors of William Booker, and guardian of Edith N. Booker, had against the plaintiff, as executor of Sarah N. Booker, plaintiff's counsel then introduced witnesses to prove, that they were well acquainted with plaintiff, and that he was not a man of capacity, and education, to enable him to understand long accounts.   That he was rather dull.   The defendant objected to this testimony, but the court permitted it to go to the jury, and the defendant excepted, as also to the admission of the previous witness, upon the ground that he was interested.   These matters are now assigned as error.

P. MARTIN and B. W. HUNTINGTON, for the plaintiff in error.

1. The plaintiff in error contends, that Stith was an incompetent witness, notwithstanding his opinion he was not interested. See Delone v. Rhemer, 4 Watts, 10; Walker's Rep. 131, 134; Phillips's Ev. —; Carroll v. Pathkiller, 3 P. 279.

2. A portion of the former judgment in the same case being assigned to him, gave him an interest to that amount in whatever might be recovered in this suit.

3. The witness only expected to be paid out of the judgment, which made his interest manifest.

4. The court erred in admitting testimony to prove that the plaintiff had not capacity and education to comprehend complicated accounts, and that he was *rather dull*. See 2 Kent's Com. 452; Osmond v. Fitzroy & Co. 3 P. Williams, 129; Bennet v. Vade, 2 Atk. Rep. 324; Ball v. Manew, 1 Dow's N. S. R. 380.

5. The testimony is peculiarly improper, as there was no fraud charged, or the correctness of the book of accounts made up by the auditor called in question. The witness only gave his opinion as to the *grade* of the plaintiff's intellect—he stated no *fact* for the inference of the jury. This was inadmissible. See Tolman v. Alston, 5 P. & S. 410; Bullock v. Wilson, 5 P. 338; 3 Starkie Ev. 1736; P. & M. Bank v. Borland, 5 A. R. 531.

E. W. Peck, for the defendant in error.

I.—1. The plaintiff in error undertook to show the interest of the witness by examining the witness.

2. The assignment spoken of is not shown to have been by deed. It is not shown to have been a joint assignment in favor of the witness and the other counsel.

3. It does not appear that the assignment extended further than to the judgment recovered at the time the assignment was made.

4. The assignment was not called for, that the court could determine its legal effect.

5. If by parol, it could be waived by parol, and the waiver was made in open court, and the assignment could not afterwards be set up by the party, even if otherwise it might in equity, have extended to a subsequently recovered judgment.

Stewart v. Conner.

6. The objection therefore went to the credibility, and not the competency of the witness. 1 Greenl. Ev. 434, § 390.

II.—1. Verbal admissions are to be received with great caution, therefore are either strengthened or weakened by the extent of the witness's information, &c. 1 Greenleaf Ev. § 200.

2. Verbal admissions hastily made are of little force. 6 Wend. 277. Evidence that a person in poor health, and subject to depression of spirits, may be admitted to show that his statements, &c. are not entitled to the same consideration, as if made under a different state of feeling. Washburn's Dig. 345, § 8.

3. The force of admissions must depend upon the *circumstances* under which they were made. In many cases it will be evidence of the strongest kind, if clearly proved—in some cases they amount to but little. 1 Phillips's Ev. 107.

4. The force of admissions declines by gradual shades from the most express and solemn admissions, down to expressions and acts which afford but remote and weak presumptions. 2 Starkie's Ev. 37.

5. The case of Wood v. Brown was decided on different principles. In that case the settlement was sought to be avoided, by showing incompetency, &c. Here the evidence was offered, not to show that the admissions were void because the party was *non compos,* but to show the force of the admission, whether it afforded a strong or a weak presumption against the party.

COLLIER, C. J.—1. This cause was before this court at a previous term, but the points then considered are not decisive of either of the questions now presented. 9 Ala. Rep. 818. The competency of the witness, Stith, was rested by the circuit judge, upon the grounds that he had no interest in the result of the suit, which disqualified, and if he had, the objection to him came too late.

It was stated by the witness that he was one of the plaintiff's counsel, and supposing his client would have no other means of compensating his services, he took an assignment

13

from him of a part of the judgment which had been previously recovered in this suit, to secure himself and associate counsel the amount of their fees; that that judgment had been reversed, and he had or claimed nothing under the assignment. The opinion of a witness that he has no interest in the result of a cause, does not furnish a conclusive test of the fact. If it appears that he has misapprehended his rights, and that he will really be benefited, if the decision is favorable to the party for whom he is called to testify, he may be rejected, though he declares that he will not be affected by the determination. This is an established principle in the law of evidence, which neither party controverts. That the witness in the present case really believed that he had no disqualifying interest may be conceded, yet if the plaintiff made the assignment as he stated, the rights which it conferred were not entirely extinguished by the reversal of the judgment. In the absence of additional or explanatory proof, it is but a reasonable inference that the assignment was in writing and in usual form. This being so, the declaration of the witness that he was entitled to, or claimed nothing under it, could not operate as a release of the interest it transferred to him. An assignment of a judgment does not invest the assignee with the legal title to it, but merely authorizes him to coerce a collection by suing out execution in the plaintiff's name, and appropriating the proceeds to himself. It transfers merely an equitable interest, which attaches itself to the suit if the judgment is reversed, and still left pending for another trial; and if upon a subsequent trial the plaintiff is again successful, the assignment attaches in equity to the second judgment, and so on *toties quoties.* The witness then, though unconscious of it, had an interest in the plaintiff's recovery, and was consequently incompetent to testify for him. Phillips v. Thompson, 2 Johns. Ch. Rep. 418; Robertson v. Stewart, 5 Watts's Rep. 442; Hillhouse v. Smith, 5 Day's Rep. 432; 2 Phil. Ev. C. & H's Notes, 114 *et seq.,* and cases there cited.

It is said that there is hardly any restriction either as to the time or manner of raising objections to the competency of a witness; but if not made till after trial, they come too late. Sims v. Givan, 2 Blackf. Rep. 461. Ordinarily, at

whatever stage of the cause the witness is discovered to be interested, his testimony must be rejected.    Swift v. Dean, 6 Johns. Rep. 523; Fisher v. Willard, 13 Mass. Rep. 379. An objection, if known, it is said, should not be delayed so long as to deprive the opposite party of the right to release or discharge the interest.    2 Phil. Ev. C. & H's Notes, 708, and cases there cited.    Here, the objection to the witness was not made, until he was dismissed and called by the plaintiff a second time.    What we have said will abundantly show that the question of the witness's competency was made in due season, and should have been sustained.

2. The opinion of a witness in general is not evidence— he must state facts.    But on questions of science or trade, or others of a kindred character, persons of skill may speak not only as to facts, but are allowed also to give their opinions in evidence.    1 Phil. Ev. 290; 2 Id. 759, C. & H's Notes, and citations; Gibson v. Williams, 4 Wend. R. 320; 7 Verm. Rep. 161; Morse v. The State, 6 Conn. Rep. 9; State v. De Wolf, 8 Id. 93; Kinne v. Kinne, 9 Id. 102; Law v. Scott, 5 Har. & Johns. Rep. 438, and many decisions of this court.    The statement of the plaintiff's witnesses, that they were well acquainted with him, "and that he was not a man of capacity and education to enable him to understand long accounts—that he was rather dull," was nothing more than the opinion of the witnesses as to the grade of the plaintiff's intellect, and his education; and upon the principle stated was clearly inadmissible.    If imbecility of mind could be shown, for the purpose of impairing or destroying the effect of an admission made by a party, the special facts of which such a conclusion could be predicated should be proved, and the jury should make the inference.

A most respectable elementary writer says: "If the party be absolutely deprived of the use of his understanding, or be deemed by law not to have attained a sufficient degree of mental power, there can be no *aggregatio mentium*, or mutual assent of minds; and consequently, no binding agreement.    But the law *presumes* that there is a full capacity to contract.    The instances in which protection is given from responsibility on agreements, on account of mental inability, form exceptions to the general rule; and must be strictly es-

tablished on the part of the promiser who claims exemption. It is only in the prescribed instances that protection can be claimed : and weakness of mind short of insanity; or immaturity of reason, where the party has attained full age ; or the mere absence of experience or skill upon the particular subject of the contract in question, afford no ground for relief at law or in equity, if no actual fraud be practised on the party." Chitty on Con. 4 Am. ed. 107, 108. In Farnam v. Brooks, 9 Pick. Rep. 212, it was held that no degree of physical or mental imbecility which does not deprive one of legal competency to act, is of itself sufficient to avoid a contract or settlement with him. And in Dodds v. Wilson, 1 Const. Rep. 448, the court say a contract with a man of weak mind is binding, if no fraud or undue advantage is taken of his situation. See Somes v. Skinner, 16 Mass. Rep. 348, et seq.

In Juzan, et al. v. Toulmin, 9 Ala. Rep. 662-685, we said, " Mere weakness of intellect, if the party is compos mentis, does not deprive him of the capacity to contract ; but imbecility of understanding constitutes a material ingredient in examining whether a bond or other contract has been obtained by fraud, or imposition, or undue influence ; for although a contract made by a man of fair understanding may not be set aside, merely because it was a rash, improvident or hard bargain, yet if made with a person of imbecile mind, the inference naturally arises that it was obtained by circumvention or undue influence. 1 Story's Eq. 238 to 242. In Blackford v. Christian, 1 Knapp's Rep. 77, Lord Wynford said, a bargain into which a weak mind is drawn under the influence of deceit and falsehood, ought not to be held valid. And a degree of weakness of intellect far below that which would justify a jury, under a commission of lunacy, in finding him incapable of controlling his person and property, coupled with other circumstances, to show that the weakness, such as it was, had been taken advantage of, will be sufficient to set aside any important deed." So it has been held that there is no distinction between the capacity required to make different kinds of contracts—a legal capacity to make any contract, is a capacity to make all contracts. Hale, et al. v. Brown, 11 Ala. Rep. 87. This view of the law as it respects the effect of mental imbecility short of insanity,

Stewart v. Conner.

in determining the validity of contracts, may furnish an analogy by which to test the admissibility of evidence as to the character of the plaintiff's intellect, and his education, to weaken or destroy his admission that the account, as stated by an auditor, was correct.

We think it clear that the evidence adduced was inadmissible. It was not shown that the plaintiff was overreached, or that he was induced by circumvention, or undue influence, to make the admission ; nor was there any proof that the account was incorrectly stated to the plaintiff's prejudice. Such additional testimony would be indispensable to induce even a court of equity, which exercises a more enlarged and liberal jurisdiction, to accord any influence to imbecility of mind, as a ground of relief against an unconscionable contract. Mere weakness of understanding or defectiveness of education, cannot render inoperative, an act otherwise valid ; it must be connected with other facts showing that it had been taken advantage of, so as to warrant the implication of fraud. This is the rule which we have seen is recognized in chancery. How far a court of law would go in affording relief in such cases, we need not consider, as it is clear that a more extended or liberal principle is not there acknowledged.

It may be conceded that all admissions are not alike potent as evidence, and that their effect may be impaired by showing that they were over-hastily or inconsiderately made without a knowledge of the facts. But this must be proved by legal evidence disclosing facts from which a jury may deduce a conclusion, and not by the opinions or conclusions of witnesses. None of the citations of the counsel for the defendant in error, not even that from the Vermont Reports, on which he most strongly relied, lay down the law more broadly.

On both the points considered, the circuit court misapprehended the law—its judgment is consequently reversed, and the cause remanded.