## GRAY'S EXECUTORS vs. BROWN.

1. Although it is not necessary that a release should be delivered personally to a witness, in order to restore his competency, yet it is necessary that he should be apprised of its existence when his deposition is taken; and where the release is attached to the deposition by the commissioner, but there is no proof that the witness ever saw it or knew of its existence, it is not sufficient to restore his competency.

2. A release of one partner discharges his co-partner also.

3. A general objection to the testimony of a witness when his deposition is taken, does not raise the question of incompetency by reason of interest, and should be disregarded.

4. An objection to a deposition on account of the interest of the witness cannot be raised for the first time when offered on the trial, if the party objecting knew that he was interested when the deposition was taken; but if the objection is made as soon as may be after the interest is discovered, it will be heard.

5. Where a surety pleads an extension of time by the creditor to the principal debtor, and it is shown that the creditor accepted two deeds of trust from the debtor, to the first of which the surety assented, evidence of the depreciation in value of the property thereby conveyed, between the time of defendant's notice to plaintiff to sell and the sale, is irrelevant and inadmissible for defendant.

6. Where the surety assents to an extension of time to the principal debtor, he is bound by his contract as altered; but a subsequent extension of time, for a valuable consideration paid the creditor by the debtor, without his assent, discharges him.

7. The plea of usury is a personal privilege, intended for the benefit of the borrower; but his surety, or an accommodation endorser, may also take advantage of it.

8. The question of usury is not affected by taking separate notes for the principal and interest, and renewing the latter yearly.

ERROR to the Circuit Court of Tuskaloosa.

Tried before the Hon. A. B. MOORE.

ASSUMPSIT against the defendant in error, as endorser of a bill of exchange, drawn and accepted by Donoho & Payne, dated the 2d of June, 1840, and due twelve months thereafter. The defendant pleaded: 1st. The general issue; 2d. The statute of limitations; 3d. That time had been given the drawers and acceptors by the testator of the plaintiffs, postponing the payment of the bill, by virtue of an agreement entered into between them, without the defendant's consent, and which agreement was based upon a new and valid consideration moving from the drawers; 4th. Usury.

It appears, that on the 23d day of September, 1842, the drawers of the bill made a conveyance to trustees of certain real and personal estate, to secure the payment of the same, which provided that the possession of said property should remain with them, until the plaintiff's testator, who held the bill, and who was the party of the third part to the deed, should, in writing, require the trustees to sell.

On this deed, which was duly recorded, Brown, the defendant, made the following endorsement: "In consideration that the party of the third part has given day of payment on the

bill of exchange hereinbefore described, to the party of the first part, one of whom, the said Donoho, is the son-in-law of the said William P. Brown, the endorser of the said bill of exchange, the said William P. Brown agrees, at the sealing and delivery of these presents, that such giving day of payment of the said bill of exchange by the party of the third part to the party of the first part, upon his giving the security hereinbefore expressed, shall in no wise release the liability of the undersigned, endorser of said bill; but that his legal liability, as it now exists, shall continue. Witness, my hand and seal, this — day of September, 1842.

(Signed) W. P. Brown, [seal.]"

Afterwards, on the 24th of June, 1843, it appears another deed of trust was executed by the drawers for the further security of the payment of this bill, conveying to trustees one third interest in a steam boat, and providing that the grantors should retain the possession of the same until the 1st March, 1844, after which the same could be sold on the request of the plaintiff's testator made of the trustees.

In the meantime, between the dates of these deeds, Brown, the defendant, notified the plaintiff's testator to proceed and sell the property embraced in the first deed, or he would be no longer bound; but no sale was made until 1846, when one of the slaves conveyed by it had died, and the other property had depreciated in value.

The proof also conduced to show, that the testator had ordered the trustees to sell, but had afterwards, in consideration of the execution of the deed of trust on the steam boat, and the promise on the part of the drawers to pay him annually out of the receipts of said boat some twelve or eighteen hundred dollars, to be credited on said bill, to extend indulgence to them until the law day in the last named deed, remarking at the time of the agreement that he thereby released Brown, the endorser.

The circuit judge admitted evidence of the depreciation of the value of the property conveyed by the first deed, between the time of Brown's notice to the testator to proceed to sell the property and time of the sale. This was objected to by the plaintiffs, but allowed to go only so far as regarded the question, whether the defendant consented to the extension of the debt; and the plaintiffs excepted.

The proof likewise conduced to show, that Donoho, one of the drawers, had borrowed $4,000 from Gray, the testator, in 1836, and gave his bill of exchange for that sum, with a separate bill for $500 by way of interest at the rate of $12\frac{1}{2}$ per cent. per annum, both bills payable at twelve months; that the small bill was paid at maturity, and the debt extended for another year, by the execution of two new bills for the like amount, and due in twelve months; that the debt was renewed from year to year in this way, until the maturity of the bill sued on, the small bill given for the interest having been paid; that Donoho, some two years after the loan, united with Payne, the other drawer, and the renewals were made in their partnership name of Donoho & Payne.

It was also shown, that besides the several $500 bills paid as interest, the drawers had paid to Gray, as the proceeds of the receipts of the steam boat, the sum of $1,915, and the property embraced in the first trust deed was sold at $1,702$\frac{68}{100}$; the boat was libelled for repairs and sold, and was consequently of no avail as a security for the payment of the bill under the deed.

It appears that Brown, the defendant, made affidavit under the statute that Donoho, one of the drawers of the bill, was a material witness for him on the trial of the cause, and that said witness, by reason of long sickness and great bodily infirmity, was incapable of attending to give his testimony in court, and he prayed and obtained a commission to take his testimony by deposition. Upon the examination of this witness, the commissioner in the caption inserts, in parenthesis, "(plaintiff's counsel being present, objected to the testimony of the witness.)" This deposition was offered by the defendant, and the plaintiffs objected to it, because, as they alleged, the witness was interested. Defendant then proved by one Whitfield, that a release attached to the deposition was executed by defendant at the time it bears date; that the said witness, Donoho, was not present when it was executed; that he did not know that the release was ever delivered to said Donoho, or that said witness knew of the existence of the release when he was examined; and that he (Whitfield) was present when the said deposition was taken. The commissioner testified, that the release was before him when he took

18

the deposition, and after it was concluded he attached the release to the commission and deposition, and enclosed them all under his seal to the court. On this evidence, the court overruled the objection to the deposition, and the plaintiffs excepted.

The release recites the pendency of the suit on a bill upon which said witness is one of the drawers, and fully discharges and acquits him of all claim, demand or liability to Brown, the releasor, by reason of his being on said bill, and of all interest which in any way he may have in the subject matter of the litigation. The plaintiffs then insisted that said witness was incompetent, notwithstanding the release; but this objection was overruled, and the plaintiffs excepted.

Upon this proof, the court was asked by the plaintiffs to charge the jury, that, although they should find that the deceased agreed to extend the time of payment upon the execution of the deed upon the one-third interest in the steam boat, yet, if they believed the defendant made the agreement entered upon the back of the first deed, this authorized the deceased to make such extension, and that the giving of day on said bill without defendant's consent, after his said endorsement, would not discharge him from his liability as endorser. This charge the court refused to give; and instructed the jury, that if, when the second deed was given, there was such an extension of the debt as would have given Donoho & Payne a right to have enjoined the collection, if attempted by Gray before the time of extension had expired, then the defendant was discharged, if he did not assent to the extension; and that if the jury believed, from the evidence, that when said second deed was executed, the debt was extended by Gray to a day certain, the deed was a sufficient consideration therefor, and authorized Donoho & Payne to enjoin Gray from proceeding to collect before the day agreed upon had arrived, had he attempted such collection.

The court also charged, that if the jury believed that interest at the rate of 12½ per cent. per annum was paid upon the several renewals of the debt, then the plaintiffs could recover no interest, and the payments proved should be applied to extinguish the $4,000; and that the plaintiffs could recover only the difference between the amount of payments and the

$4,000, and ten per cent. on said sum as damages upon the protest of said bill for non-payment.

The plaintiffs asked the further charge, that, although more than eight per cent. was agreed on, yet, as the borrowers raised no objection on the ground of usury, the defendant could not avail himself of it; and that the payments ought to be applied, first to extinguish the interest up to the time of such payment, and that the balance thus left unpaid would not draw interest, as against the defendant, from the time of the last payment. This charge the court refused. To the charges given, and to the refusal of the court to give the charges prayed for by the counsel for the plaintiffs, they excepted.

The jury returned a verdict for the defendant, on which judgment was rendered; and the plaintiffs bring the cause to this court, and assign the following grounds for reversal:

1. The several rulings of the court in regard to the testimony, as set out in the bill of exceptions;

2. In giving the charges objected to, and in refusing to charge as prayed for by them in the court below.

E. W. PECK, for plaintiffs in error:

1. The alleged release of the witness, Donoho, did not restore his competency, because: 1st. It did not appear that it was delivered before the witness was examined, or even that he had any knowledge of its existence. Hall v. Steam Boat Co., 13 Conn. R. 319. A constructive delivery is not sufficient. Seymour v. Strong, 4 Hill's N. Y. Rep. 255. 2d. Because, it should have extended to his co-partner, Payne, and discharged him also.

2. The evidence of the depreciation in the value of the property covered by the first deed of trust was improperly admitted. Haden et al. Ex'rs v. Brown, 18 Ala. R. 641.

3. The agreement by defendant on the back of the first deed of trust authorized the testator to extend the day of payment of the bill of exchange as long as he might be willing to do so. It was an agreement founded on a valuable consideration, to-wit: the said deed of trust itself, the legal effect of which was, to protect the defendant by securing the debt of the testator. If, therefore, it be admitted that the

testator, on the execution of the second deed, and in consideration thereof, continued such extension, he but exercised a right secured to him by the said agreement; a right, too, that he might well exercise, under the circumstances of this case, without asking the consent of the defendant; and, although the testator may have believed and stated that by doing so he discharged the defendant, yet, in this he was mistaken, and therefore his admissions or statements so made, under a misapprehension of his legal rights, did not affect his remedy · against the defendant. Gamble v. Gamble's Adm'r, 11 Ala. 966; Machen v. Machen, 15 Ala. 373; Moore v. Hitchcock, 4 Wend. 292; Royston, Adm'r, v. Howie, 15 Ala. 309, 311; U. S. v. Hodge & Pierce, 6 How. 297.

4. Usury is a defence personal to the borrower, and intended for his benefit only; and, if not made by him, no one else can set it up. Cook & Kornegay v. Dyer, 3 Ala. 643.

5. The charge first given by the court is erroneous, because it puts it to the jury to determine a legal question, to-wit: whether the day given would have authorized Donoho & Payne to enjoin the collection of the bill.

ORMOND & NICOLSON, contra:

1. The release was delivered. Brown v. Brown, 5 Ala. 508; 10 ib. 589. The testimony shows the party knew it; for the commissioner states, the deposition was taken at the house of witness, and the release was before him. At all events, as both parties were present, plaintiff should have stated his objection definitely, so that the release might have been made effectual. 1 Paine's R. 400.

2. The endorsement on the first deed amounts to nothing. Defendant was bound without it. It is the second deed upon which defence rests.

3. Surety has a right to stand on the precise terms of his contract. Miller v. Stewart, 9 Wheaton's R. 630; Bangs v. Strong, 7 Hill 250.

4. The second deed did postpone the debt from June, 1843, to March, 1844, long enough to have sued and obtained judgment in the County Court, if he had taken up bill.

5. The charge was correct; for it was Brown's right, at any time, to take up the bill and sue drawers; but if Gray put it

out of his own power to do so, he put it out of Brown's. Brown v. Lang, 4 Ala. 50 ; Hubbell v. Carpenter, 5 Barbour 520 ; 5 Ired. E. 91.

6. Brown, being accommodation endorser, had a right to set up usury. Dunscomb v. Bunker, 2 Met. 8 ; 2 Miss. 237 ; 4 Dev. & Bat. 313.

CHILTON, C. J.—When this case was before us at a previous term, (see 18 Ala. Rep. 641,) we held, that an agreement founded on a valuable consideration, entered into between the creditor and principal debtor to a bill or note, to extend the day of payment beyond the time when it fell due, was such an alteration of the contract as discharged the security ; and this, irrespective of the length of time the payment was postponed, or whether it operated to the prejudice of the security or not. We further held, that the refusal of the creditor to sell the property on which he had taken a deed of trust to secure the payment of the bill, upon the request of the endorser to make such sale, did not discharge the latter. The case has again returned upon us, and several questions are presented which are not affected by the previous decision.

1. We waive the consideration of the question, whether Donoho, who was one of the drawers and acceptors of the bill sued on, was competent to testify, without a release, in favor of Brown, who endorsed the bill for the accommodation of the firm of Donoho & Payne, inasmuch as the counsel have not thought proper to argue this point; and the objection to the witness' competency may be disposed of upon another ground. The counsel for the defendant in error, conceding the incompetency of the witness, insists, that the release accompanying his deposition discharged his interest, and qualified him to testify. We do not think the evidence shows that this witness, either before or at the time of giving his deposition, was apprised of his release; and as the object of a release is to free the mind of the witness from any supposed bias which his interest might otherwise produce, it is clear, that if he testifies in the absence of all knowledge of the release, it is the same as if it had never been executed. It is not necessary that there should be a delivery of the release personally to the witness. It may be filed in court. Brown

v. Brown, 5 Ala. 508; Frow & Furguson v. Dounman, 11 ib. 880. So also, if the party execute and tender the release, and the witness refuse to accept, this refusal shall not deprive the party of his testimony, having done all he could. Burt v. Baker, 3 T. R. 35; Goodtitle v. Welford, Doug. 139; Roscoe's Civ. Ev. 93; 1 Phil. Ev. 128.

But all the authorities agree, that the witness must be cognizant of the release, where it is attempted to restore his competency by such means.

2. The objection urged by the counsel for the plaintiffs in error, that the release in this case is insufficient, because it applies only to Donoho, and does not in terms discharge his late partner, Payne, cannot be supported. A discharge of one partner from all liability on account of an undertaking by the firm, is a discharge of the firm; for the reservation of the right to proceed against the other partner, who in turn could require the discharged partner to make contribution, would render the discharge incomplete; but this purports to be a full and complete discharge, and hence operates as a discharge of every party, who, if made liable to the releasor, could demand contribution of the witness. This view does not conflict with those cases which hold, that a partner may stipulate for his own discharge from the debtor, and that his co-partner shall remain bound. 10 Ala. 999.

3. But conceding that the witness was incompetent, by reason of interest, and that the release found in the deposition did not restore his competency, the question arises, did the plaintiffs make the objection in proper time? The parties must have known the true position the witness occupied to the subject matter in litigation between them, at the time it was proposed to take his deposition. The plaintiffs' counsel was present upon his examination, and raised no objection upon the score of interest. True, he made a general objection to his testimony; but the rule, as frequently asserted by this court, is to disregard such general, undefined objections. Wallis v. Rhea, 10 Ala. 451; Milton v. Rowland, 11 ib. 732; Donnell v. Thompson, 13 ib. 440; Same v. Jones, ib. 490. Had the objection been to the competency of the witness, the defendant could have released his interest, if that were the ground; but the objection is to the deposition, and not to the

legal capacity of the witness to depose. Such objection does not raise the question of interest. 10 Mar. Lou. Rep. 633. The question then recurs, as the objection for interest in the witness was not raised until the deposition was offered to be read on the trial, should the court have excluded it? It must be admitted, that the decisions bearing upon this point are not very satisfactory or consistent. The rule laid down by the elementary writers upon the law of evidence, as it originally obtained, is, that an objection to competency ought to be taken in the first instance, and before the witness has been examined in chief; for the reason that it would afford an unfair advantage to the other party, who would avail himself of the testimony of the witness if it were favorable, but would get rid of it by raising the objection if it turned out to be adverse. 1 Stark. Ev. 121; Rex v. Watson, 3 E. C. L. R. 271, cited by him; Roscoe's Civil Ev. 80; 1 Phil. Ev. 123; 1 Greenl. Ev. § 421–2.

So in Ogle v. Paleski, Holt 435; S. C., 3 E. C. L. R. 417, where interrogatories and cross interrogatories were read at the trial, and from the answers it appeared that the witness was interested, Gibbs, C. J., received the evidence, ruling that the objection ought to have been made in a former stage. See also Buching v. Gomer, 3 E. C. L. R. 117.

A party has a right, at his election, to admit an interested witness to testify against him, but the election must be made as soon as the opportunity is presented for making it; and failing to make it at that time, he must be considered as having waived it forever. Greenl. Ev. § 421; Donelson v. Taylor, 8 Pick. 390. I speak of course of those cases where the interest of the witness is known to the party who seeks to exclude his testimony; for, if the interest was not discovered until after he has been examined, and "cross examined to the bone," as Lord Eldon said in Vaughan v. Worrall, 2 Swanst. 400, the objection may then be insisted on, and the testimony excluded. So that, "if the objection is taken as soon as may be after the interest is discovered, it will be heard; but after the party is in mora, it comes too late." 1 Greenl. Ev. § 421. The party offering the deposition should have an opportunity to release the witness, which he may do at any time before the examination is completed; but he

would be deprived of this right, if induced to repose upon the legality of the testimony, by the failure of the opposite party to object until the trial, or by some general, vague objection which may be referred to any other than the true reason, which lies concealed in the breast of the objector until sprung for the first time at the trial. 3 How. Sup. Ct. Rep. 515, 530; 1 Paine 400; 2 Paige 54; 2 Tidd's Pr. 812. The rule, says Mr. Greenleaf, *supra*, is the same in equity and at law; and it has frequently been held, both in this country and in England, that if the interest is known while before the examiner, it should be made there, and if not made the first opportunity after it is discovered, it is waived. 2 Phil. Ev. (Cow. & Hill's Notes) 257, note 247, and cases there cited; ib. 708, note 497. The same doctrine seems to be recognized in Stewart v. Connor, 13 Ala. 94. These authorities may suffice to show that the court did not err in admitting the deposition of Donoho to be read, conceding his interest and the invalidity of the release.

4. We are wholly unable to perceive how the testimony showing a depreciation in the value of the property conveyed by the first deed can be made relevant, or what influence it could have had upon the question of defendant's consent to the extension of the demand by the principal debtor. If the object was to prove a probable motive, founded on the fact of such depreciation, for withholding defendant's assent to the extension of the debt, which would operate to postpone the sale, and consequently tend to increase his risk, as the property was lessened in value, such proof was clearly inadmissible; for the fact of depreciation had no direct or apparent connection in any manner with the fact proposed to be established by it, and was too remote from the fact of assent or dissent of the defendant, to furnish any reasonable presumption or inference concerning it, as to whether it existed one way or the other. We can readily perceive how such proof might well have misguided the jury, by drawing away their minds from the true points involved in the issues, and as tending to excite a prejudice injurious to the rights of the plaintiffs. The presumption to be predicated of such proof was too remote and uncertain to furnish any safe guide in arriving at the truth of the fact attempted to be established by it,

and the court clearly erred in the admission of the proof. See Jones v. Cooper at the present term, and cases there cited.

5. In regard to the charges, a few words may suffice. The agreement made by Brown, as evidenced by his writing on the back of the first deed of trust, had the effect of waiving his right to a discharge by reason of the indulgence then granted, but does not, by any reasonable construction of it, give the creditor a right to give further indulgence. So far as he consents to an alteration of the original contract, Brown was bound by it as altered; but he was bound as accommodation endorser, and had the right to stand upon the terms of his contract, as altered by his consent. Any material alteration of this subsequent contract, by giving further day of payment to the principal debtor, by an agreement between him and the creditor, based on a valuable consideration, would discharge Brown, as is shown by the decision of this case at the previous term.

6. Neither do we think that the charge given, that if Donoho & Payne had the right, under the second agreement, to have enjoined the plaintiffs' testator from proceeding to the collection of the demand before the expiration of the time for which they had agreed to extend the demand, was objectionable as referring to them a question of law. It was merely used as an illustration by the court, and he immediately proceeded to explain what would thus entitle them to enjoin such collection; that if, when said second deed was executed, the debt was extended by Gray to a day certain, the deed was a sufficient consideration therefor, and entitled the said Donoho & Payne to enjoin Gray, if he attempted the collection before the time agreed upon as the extension had expired. We see nothing wrong in this charge; but it asserts the familiar principle as laid down by this court in many cases.

7. As respects the question of usury, we fully agree to the proposition, that usury is a personal privilege intended for the benefit of the borrower, and that if he chooses to waive it, no one else can take advantage of it. Cook & Kornegay v. Dyer, 3 Ala. 643. But we do not understand this principle to assert, that the principal debtor alone can avail himself of the usury; for if this were the law, the surety would of-

ten be bound beyond his principal. If the surety may not set up the usury, and the principal may, then, when the surety is sued and pays the debt, he could not be indemnified by a recovery out of his principal. Such, however, is not the law. The rule is, that when the party who makes the corrupt or usurious contract sues upon such contract, the security can avail himself of any valid defence which his principal might set up, and an accommodation endorser may have the same relief. Dunscomb v. Bunker, 2 Met. Rep. 8; Weimer v. Shelton, 7 Miss. Rep. 237; Warren v. Crabtree, 1 Greenl. Rep. 167.

Nor does the renewal of the demand from year to year, and the splitting it up by giving one bill for the principal debt and another for the usury, affect the question. It would be a fraud upon the statute which would enable parties to evade it altogether, were they allowed to render such devices effectual. If the original contract was usurious, any subsequent one to carry it into effect is likewise usurious; and although the usury is paid from year to year, and extensions granted upon the execution of new securities, this does not free the new securities from the taint of usury, but should be regarded as a continuation of the same transaction. See the cases cited in vol. 3 U. S. Dig. 620; vol. 2 Sup. to same, 907; and the payments made should be credited on the demand, which, under the statute, can draw no interest, if found usurious.

There was no error in the charge of the court prejudicial to the plaintiffs in error; and the charge asked upon the subject of the usury, which assumed that the interest should first be extinguished by the several payments, and that defendant would only be released from interest from the time of the last payment in the event more than eight per cent. per annum was reserved by the contract, was properly refused.

For the error we have noticed in the admission of proof as to the depreciation in the value of the property conveyed by the first deed, the judgment is reversed, and the cause remanded.