410 So.2d 14 (1982)
Sherry CONLEY
v.
HARRY J. WHELCHEL CO., et al.
80-338.
Supreme Court of Alabama.
February 5, 1982.
Stephen D. Heninger of Hare, Wynn, Newell & Newton, Birmingham, for appellant.
John M. Laney, Jr., of London, Yancey, Clark & Allen, Lyman H. Harris and Judy Carol Whalen of Lorant, Harris & Yearout, Birmingham, for appellee Harry J. Whelchel Co.
BEATTY, Justice.
Appellant, Sherry Conley, appeals from a grant of summary judgment against her by the Circuit Court of Jefferson County in her action to recover damages for personal injury. We affirm.
Appellant was injured when her hair became caught in the unguarded parts of a grain auger which was being operated by her husband, Ricky Conley. At the time of the incident, Ricky was working part-time as a farmhand for W. A. Beavers, the owner of the auger.
On December 6, 1979, appellant filed suit for the injuries she suffered against L. H. Chandler and the Harry J. Whelchel Company, the distributors of the auger, Lear Siegler, Inc., the manufacturer of the auger, and Curtis Machine Co., Inc. The trial court granted a motion for summary judgment in favor of Curtis Machine Co., Inc. That order is not a part of this appeal.
Mr. Beavers, who is not a defendant in this action, had a farm insurance policy with South Carolina Insurance Company and that company employed General Adjustment Bureau (G.A.B.) to adjust any *15 claims under the policy. One of G.A.B.'s adjusters, Peter D. Lenhart, contacted appellant and her husband about the accident. The possibility of settling any claim which might arise between appellant and Mr. Beaver's insurance company was discussed. One of Mr. Lenhart's reports about the meeting specifically mentioned that a covenant not to sue might be obtained from appellant in return for an agreed upon settlement amount.
On January 2, 1980, approximately one month after this action was filed, Mr. Lenhart settled the appellant's claim against Mr. Beavers for $15,000.00 plus $500.00 in medical benefits. In consideration for that amount, appellant and her husband were asked to sign a form release and they did. The release was not read to appellant, though appellant was given the opportunity to read it for herself; however, it was explained by Mr. Lenhart, according to his deposition, in this manner:
I explained to them that this was a full release for settlement of all claims in regard to the injury that Mr. Beavers would be responsible for.
Q. All right. Did you, at any time, tell them or advise them in any way that they were settling all claims against any party whatsoever that could have been responsible for Sherry's or his injuries?
A. That was not discussed.
Appellant and her husband testified that they were informed that the release covered only Mr. Beavers. The form which Mr. Lenhart took to the appellant's home, however, was a general release with broad language that exceeded Mr. Lenhart's explanation of the extent of the settlement. The appellees in this case, Lear Siegler, Inc., Harry J. Whelchel Co. and L. H. Chandler, claiming the release is a bar against any claims involving appellant's injuries sustained on November 4, 1979, filed motions for summary judgments in their behalf. The trial court granted the motions on February 6, 1981, and stated that it found that the "release releases all parties jointly or severally liable to the plaintiffs." It is from this order that Sherry Conley appeals.
Both sides agree that pursuant to Code of 1975, § 12-21-109, the "release ... must have effect according to the intention of the parties." Appellant claims that the release must be viewed in light of the circumstances surrounding its execution and that the intention of the parties was to effect a pro tanto settlement rather than a full and complete satisfaction of appellant's claim against all parties. Appellant relies upon Miles v. Barrett, 223 Ala. 293, 134 So. 661 (1931), for the proposition that a release given and accepted under mutual mistake of fact may be avoided. That rule of law is true, however, appellant is not asking this Court to void the release in question. Instead, she requests that the release be held not to apply to appellees except insofar as it pro tanto reduces any obligations they might be found to have in regard to appellant's claim. That remedy, however, is not available for the reasons that follow.
The release in question states that Mr. Beavers is released from all liability in connection with appellant's accident and that "any and all other persons ... whether herein named or referred to or not, and who ... may be jointly or severally liable to the undersigned" are also released. The trial court found that the release "clearly releases the subject defendants, the wording and the meaning of the words are neither complex nor misleading. There is no ambiguity in its terms." We agree. In the absence of fraud, a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to the intention of the parties to be judged from what appears within the four corners of the instrument itself and parol evidence is not admissible to impeach it or vary its terms. Miles v. Barrett, supra.
The evidence in the record shows that appellant could have attempted to avoid or rescind the entire release on the grounds of mutual mistake, fraud or misrepresentation. Furthermore, appellant could have requested reformation of the release, pursuant to Code of 1975, § 8-1-2, to express the true intention of the parties. *16 Appellant chose none of those routes. Rather, she asks this Court to fashion a new remedy, i.e., a "partial revocation" of the release. The release cannot be construed as valid to Mr. Beavers, yet void as to appellees. The entire release must be construed as either void or invalid as to all parties. We find that the unambiguous release is valid as a matter of law. Thus, the trial court did not err in granting summary judgment.
Let the judgment be affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.
SHORES, J., concurs specially with opinion in which TORBERT, C. J., concurs.
JONES, J., dissents with opinion in which ADAMS, J., concurs.
SHORES, Justice (concurring specially):
I concur that this opinion merely follows existing law. I note, however, that if the writing does not accurately reflect the intention of the parties to it, Mrs. Conley would be entitled to bring an action seeking reformation of the instrument to conform it to the true intention of the parties.
TORBERT, C. J., concurs.
JONES, Justice (dissenting):
In registering my dissenting views, I acknowledge that the holding of the majority is in accord with case law generally to the effect that one who accepts payments from one tort-feasor and executes a release which, in express terms, releases "any and all other persons" is held to have discharged both the payer party as well as all other tort-feasors not party to the release agreement.[1]
The development of our cases is clear that the "any and all other persons" language discharges the obligation, including the nonparty obligors. This arose out of the common law concept that the right of action is one and indivisible, and that satisfaction extinguishes the demand, Steenhuis v. Holland, 217 Ala. 105, 115 So. 2 (1927); and this had its inception in the earlier common law notion that a creditor's release of any one of several joint debtors extinguishes the debt. See Orr v. Reed Phosphate Co., 215 Ala. 562, 112 So. 145 (1927). The rule of judgments which permits but a single satisfaction likewise became the rule that "satisfaction" by one without suit inures to the benefit of all, or, rather, cuts off the right of action by extinguishment.
The legislature sought, as early as 1852, to modify this common law concept, by adopting the predecessor to Code 1975, § 12-21-109. Clearly, two major changes are effected by § 12-21-109: 1) It dispenses with the necessity of a formal release under seal (Jordan v. McDonnell, 151 Ala. 279, 44 So. 101 (1907)); and 2) it modifies the conclusive effect of a creditor's release of one of several joint debtors (Orr, supra). Surely, one other substantive change is intended: That of subjecting a settlement or release agreement to the law of contracts ("... must be given legal effect according to the intention of the parties thereto.") The law of torts and the law of judgments influenced the evolvement of the common law rule. The obvious purpose of this statute is to have a contract of release governed by the law of contracts.
Simply stated, our case law, while giving lip service to the statutory "intention of the parties" language, has relentlessly clung to vestiges of the common law rule. To be sure, Steenhuis, approving a pro tanto agreement, demonstrates the Court's willingness to apply this statute in favor of restricting the effect of a release contract where it speaks in terms of discharging "all claims" but limits its operation to the *17 named party paying the consideration for the agreement. Likewise, though reaching a contrary result, Johnston v. Bridges, 288 Ala. 156, 258 So.2d 866 (1972), applied the same "intention of the parties" principle to enforce a release contract where the parties seeking to invoke its protection, though nonparties, were named or otherwise unmistakably described in the agreement.
It is not with the holdings of these cases that I disagree. The holdings of Steenhuis and Johnston, within the factual context of each case, represent classical applications of contracts law to disputed interpretations of written agreements. My quarrel lies with those cases that interpret "boilerplate" language"any and all other persons"as extending the discharge effect of the release to unnamed and undisclosed non-parties persons, as here, who have paid no part of the consideration, know nothing of the release transaction, and who stand in no position of privity or other legal nexus with either of the signatories party to the agreement.
Such holdings (or language to this effect) defy the law of contracts. They continue to infuse into the interpretation of written agreements those very "joint tort-feasor" principles which were intended by the statute to be replaced by "the intention of the parties thereto" principle of contracts law.
Perhaps one simple scenario will make my point: Suppose, instead of the release agreement's including third parties within its discharge provision, it obligated those same third parties to pay additional compensation in order to effectuate its terms. In other words, suppose the instant agreement contained a provision fixing the Appellees' obligation to the Appellant at an additional $100,000. It would be nothing short of ludicrous to even imagine that this Appellant could enforce a provision which imposes an obligation upon a nonparty to the release agreement. The same contract principle that relegates this hypothetical to the ridiculous applies with equal force to void the release provision which confers a benefit upon a nonparty.
This is not to say, of course, that parties to a contract, under given circumstances, may not obligate or benefit third parties. Indeed, the law of contracts accommodates itself to just such eventualities by prescribing the requisite elements of "parties in privity" (the capacity of a signatory party to act on behalf of nonparties) and third party beneficiaries (those nonparties whom the principals, through their mutual performance of the agreement, intend to benefit upon certain stated or implied conditions). Neither of these contract principles is applicable here; nor do the Appellees so contend.
Likewise, the law of contracts provides for the credit of any sums paid by the named released party against any liability that may be imposed against nonparties to the release agreement. In other words, if this Plaintiff should recover a $100,000 award from the Defendants for her injuries, the $15,500 consideration paid by her employer's liability insurance carrier would be credited against their obligation. This accommodation satisfies the "but one recovery" concept, and, thus, adequately protects nonparties to the release agreement. Moreover, the limitations of the parol evidence rule are less restrictive where third parties are seeking to invoke the benefits of a contract. See W. H. E. Jaeger, Williston On Contracts, § 647 (3rd Ed. 1961).
ADAMS, J., concurs.
NOTES
[1] This statement of the law is an ofttimes repeated proposition in our cases. See, for example, Thompson v. N. C. & St. L. Railway, 160 Ala. 590, 49 So. 340 (1909); and Wright v. McCord, 205 Ala. 122, 88 So. 150 (1920). My limited research, however, fails to disclose a single Alabama case which directly holds that a joint tort-feasora nonparty who is neither named nor described in the release contractis discharged from his tort obligation as a matter of law. As to a suit on account, however, see Gray's Executors v. Brown, 22 Ala. 262 (1853).